### FAIRBANKS NORTH STAR BOROUGH, Appellant,

v.

### LAKEVIEW ENTERPRISES, INC., Urban Rahoi, Vienna Rahoi, Phillip Rahoi, and Beverly Rahoi,

and

### City of Fairbanks, Appellees.

### LAKEVIEW ENTERPRISES, INC., Urban Rahoi, Vienna Rahoi, Phillip Rahoi, and Beverly Rahoi, Appellants, Cross–Appellees,

v.

### FAIRBANKS NORTH STAR BOROUGH, Appellee, Cross–Appellant.

### Nos. S–5329, S–5763 and S–5819.

Supreme Court of Alaska.

June 9, 1995.

---

David A. Bricklin and David S. Mann, Bricklin & Gendler, Seattle, WA, and Ward Merdes, Merdes & Merdes, P.C., Fairbanks, for Lakeview Enterprises, Inc., Urban Rahoi, Vienna Rahoi, Phillip Rahoi and Beverly Rahoi.

Charles D. Silvey and A. René Broker, Cook, Schuhman & Groseclose, Inc., Fairbanks, Mark Andrews, Asst. Borough Atty., Ardith Lynch, Borough Atty., Fairbanks, for Fairbanks North Star Borough.

Paul J. Ewers, Deputy City Atty., and Herbert P. Kuss, City Atty., Fairbanks, for City of Fairbanks.

Before: MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

Lakeview Enterprises, Inc. and Urban, Vienna, Phillip and Beverly Rahoi (collectively Lakeview) appeal the trial court's directed verdict on their inverse condemnation claim against the Fairbanks North Star Borough (Borough). Lakeview also argues that the trial court erroneously instructed the jury on Lakeview's nuisance and negligence claims and erroneously limited the testimony of Lakeview's expert. We affirm.

By cross-appeal, the Borough challenges the trial court's denial of certain summary judgment motions and some of its trial rulings. The Borough also appeals its attorney's fees award against Lakeview, the judgment entered in favor of the City of Fairbanks (City) against the Borough in the Borough's third-party action, and the grant of attorney's fees to the City. We remand to

the superior court for consideration of the Borough's successful Civil Rule 68 offer in determining its attorney's fees award against Lakeview and affirm the remaining rulings questioned by the Borough.

## II. *FACTS AND PROCEEDINGS*

Lakeview has operated three trailer courts in the vicinity of its current land holdings. The only remaining trailer court, Lakeview Terrace, opened in 1976 or 1977 because of the perceived need for housing during the pipeline years.

In the early 1960's, the City began operating a landfill on property adjacent to Lakeview's property despite Lakeview's opposition. The City disposed of solid waste on a portion of the landfill nearest Lakeview's property. Lakeview experienced problems associated with the landfill immediately after it opened. According to Urban Rahoi, one of Lakeview's owners, the landfill was a nuisance from its inception because of the smell and smoke it generated, and birds, flies, rats and mosquitos it attracted. In 1972 Lakeview considered the situation "desperate," and Phillip Rahoi threatened to sue the City if it did not move the landfill; however, Lakeview did not pursue legal action at that time.

The Borough assumed operation of the landfill in 1974. It closed several other small dumps and began transporting all its garbage to the landfill. In 1978 the Borough made several improvements to the landfill, including purchase of a baler to compress solid waste. After 1978 the Borough did not dispose of any solid waste in the landfill area nearest Lakeview's property. It made additional improvements to the landfill during the 1980's, including installation of a tire shredder, development of a rat eradication program, and implementation of a hydro-seeding and landscaping project.[1]

In 1981 Lakeview's attorney wrote the Borough and threatened legal action on ac-

count of the Borough's operation of the landfill. According to Lakeview, it sent the letter because the Borough had broken "many promises" to clean up the landfill and because Lakeview's numerous complaints about the operation of the landfill to the Borough and Department of Environmental Conservation had gone unheeded.

According to Lakeview, the volume of garbage at the landfill increased in the 1980's, as did the dump's noxious impact on neighboring property. The Rahois complained of increased odors, rats, flies, birds, fires, smoke and dust. On April 18, 1989, Lakeview filed a complaint against the Borough alleging inverse condemnation and claiming damages as of 1958. Lakeview amended its complaint in January 1990 to assert claims for negligence and nuisance. The Borough later filed a third-party action against the City claiming that any damages Lakeview suffered were caused by the City's operation of the landfill. Over Lakeview's opposition,[2] the court allowed the Borough's third-party claim to proceed.

The court later granted complete summary judgment to the City, concluding that claims arising prior to 1973 were barred by the statute of limitations. The Borough also moved for partial summary judgment on the ground that Lakeview's claims were time-barred. The trial court denied the Borough's motion, ruling that there was an issue of fact as to when the last taking occurred.

The Borough filed a second motion for partial summary judgment, claiming that the statute of limitations barred any claim based on the existence and location of the landfill next to the Lakeview property. Lakeview cross-moved, claiming that the Borough could not prove the hostility requirement necessary to establish an adverse possession claim, and that the Borough was equitably estopped from raising a statute of limitations defense. The superior court granted the Borough's motion regarding Lakeview's

---

1. Since 1972, the active portion of the landfill has been moving in a direction away from the Lakeview property.

2. Lakeview opposed the Borough's third-party action on the basis that any claim Lakeview had

against the City for its operation of the landfill from 1964 to 1973 was barred by the ten-year statute of limitations for damage to real property. *See* AS 09.10.030.

claims "based on the existence and/or location of the Fairbanks North Star Borough Landfill," and denied Lakeview's cross-motion to strike the Borough's statute of limitations defense.

The superior court later clarified the effect of its previous order:

In its order of February 20, 1992, this Court granted the Fairbanks North Star Borough's ... motion for summary judgment for takings "based upon the existence and/or location of" the landfill. This order dismissed any claims for damages based on the decision of the Borough to operate the landfill at its present site or damages resulting from the mere existence of a landfill adjacent to the plaintiffs' property. The order was based on the ten year property statute of limitations. The order did not decide issues of liability arising from the Borough's operation of the landfill. Consequently, the plaintiffs' equitable estoppel argument was irrelevant.

In addition, the plaintiffs continue to assert that an adverse possession analysis must be used to determine whether claims for takings alleged to have occurred more than ten years prior to the commencement of the present action are barred. This position, however, has been rejected. This Court has explicitly stated that the ten year property statute of limitations is applicable to inverse condemnations claims.... Accordingly, takings claims for damages arising more than ten years prior to the commencement of this action are barred. The Borough must prove the elements of adverse possession only to bar takings claims for damage within the ten year limitations period.

The rulings effectively limited Lakeview's inverse condemnation claim to takings occur-

ring within the ten years before Lakeview filed suit.[3]

Lakeview and the Borough tried the inverse condemnation, nuisance and negligence claims to a jury. The trial court directed a verdict for the Borough on Lakeview's inverse condemnation claim. The jury returned a special verdict finding (1) that the Borough was negligent in its operation of the landfill, but that the negligence did not proximately cause damage to Lakeview; and (2) that the landfill was not a nuisance to Lakeview. These appeals followed.

## III. DISCUSSION

### A. The Directed Verdict on Lakeview's Inverse Condemnation Claim

 Government actions become "takings" under principles of inverse condemnation when a private landowner is forced to bear an unreasonable burden as a result of the government's exercise of power in the public interest. *Anchorage v. Sandberg*, 861 P.2d 554, 558 (Alaska 1993). A property owner may recover damages for inverse condemnation where the state's activities deprive the owner of the "economic advantages of ownership." *Homeward Bound, Inc. v. Anchorage Sch. Dist.*, 791 P.2d 610, 614 (Alaska 1990). In order to have a legally cognizable claim of inverse condemnation, the property owner must show that his property has diminished in value because of the state's action. *State v. Doyle*, 735 P.2d 733, 738 (Alaska 1987).

 The trial court considered the basis for Lakeview's inverse condemnation action to be the incremental increase in the amount of garbage deposited at the landfill.[4] The trial court reasoned that Lakeview could prove a taking "by showing quantitative or qualitative change attributable to the Bor-

---

**3.** The Borough later filed more motions for partial summary judgment to limit the remaining issues. Among other things, the court granted the Borough's request for summary judgment on any regulatory taking claim by Lakeview. However, the court again rejected the Borough's claim that it adversely possessed any of Lakeview's property rights regarding the waste processed at the landfill pursuant to the DEC permit.

**4.** The Borough never physically invaded Lakeview's property, nor did the Borough excessively regulate the Lakeview property so as to constitute a taking. Further, Lakeview admitted that it had no claim "for damages resulting from the Borough's initial decision to operate the dump," and does not appeal the trial court's ruling on summary judgment that claims based on the existence and location of the landfill were time-barred.

ough's non-negligent interference which results in a measurable loss of market value sustained during the ten years preceding commencement of the suit." (Footnote omitted.) Lakeview filed suit on April 18, 1989. Having previously determined that the ten-year statute of limitations barred claims for any takings prior to April 18, 1979, the trial court directed a verdict on Lakeview's inverse condemnation claim because the court found that Lakeview failed to establish that the Borough's non-negligent actions during the statutory period caused compensable damage to Lakeview's property.[5]

■ Lakeview attacks the directed verdict on several grounds. It argues that the trial court erred by applying the ten-year statute of limitations to Lakeview's inverse condemnation claims. Lakeview also claims that the trial court erred in excluding portions of its expert's testimony. Lakeview also seems to contend that it presented sufficient evidence at trial to support its inverse condemnation claim. Finally, Lakeview claims that the trial court erred in restricting Lakeview's inverse condemnation claims to damages resulting from the Borough's non-negligent actions.[6]

### 1. The ten-year statute of limitations

■ The initial summary judgment order implied that the Borough had to establish each of the elements for adverse possession to time-bar Lakeview's claims.[7] The trial court later ruled that AS 09.10.030 barred all inverse condemnation claims for damages arising prior to 1979.[8] Alaska Statute 09.10.030 is the ten-year statute of limitations for real property disputes.[9]

■ Lakeview argues that the ten-year limitations statute does not bar its inverse condemnation claims for injury occurring more than ten years before the suit was filed unless all the requirements for establishing adverse possession are satisfied.

Lakeview relies on the following passage to support its contention that the Borough was obliged to prove the elements of adverse possession to time-bar Lakeview's claims.

> When there is no special statute of limitations applicable to condemnation proceedings the condemnor cannot rely on a general statute of limitations. Eminent domain proceedings are not sufficiently analogous to suits at law or equity to fall under provisions intended to apply to ordinary private controversies. But it is held that after the expiration of the *period* necessary to acquire by adverse possession, the owner who has tolerated such occupancy without applying for payment has lost his rights.

1A *Nichols on Eminent Domain* § 4.102[5] at 4–78–80 (3d ed. 1990) (emphasis added, footnotes omitted). On its face, this statement does not help Lakeview because it indicates that only the prescriptive *period* need expire before a condemnation proceeding is barred. We also note that Lakeview's argument is contrary to the position it took when it opposed the Borough's effort to assert a

---

5. In reviewing a directed verdict, we consider the evidence in a light most favorable to the non-moving party and will affirm the verdict only if fair minded jurors could not reach different conclusions. *Colt Indus. v. Murphy*, 822 P.2d 925, 928 (Alaska 1991).

6. Lakeview also claims that the trial court "erred in refusing to acknowledge evidence of contaminated groundwater as a partial cause of the economic loss suffered by the Rahois." Lakeview does not adequately brief this argument. It is consequently waived. *See Petersen v. Mutual Life Ins. Co.*, 803 P.2d 406, 410 (Alaska 1990).

7. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We review *de novo* an order granting

summary judgment. *Gilbert v. State Dep't of Fish & Game*, 803 P.2d 391, 394 (Alaska 1990).

8. The trial court also stated that proof of the elements of adverse possession was necessary "only to bar takings claims for damage within the ten year statute of limitations." Expiration of the ten-year statute of limitations is a precondition for prescriptively acquiring property without color of title. *See Weidner v. Department of Transp.*, 860 P.2d 1205, 1209 (Alaska 1993); *City of Anchorage v. Nesbett*, 530 P.2d 1324, 1328 (Alaska 1975).

9. AS 09.10.030 provides in part, "No person may bring an action for the recovery of real property, or for the recovery of the possession of it unless commenced within 10 years [after the cause of action has accrued]."

third-party claim against the City. Lakeview then argued that it had not sued the City because the statute of limitations would have barred any claim against the City, which had last operated the landfill in 1973.

In *City of Kenai v. Burnett,* 860 P.2d 1233, 1240 (Alaska 1993), we rejected the City's assertion the Burnetts' 1988 inverse condemnation claim for a 1985 taking was time-barred. We approvingly cited *City of Anchorage v. Nesbett,* 530 P.2d 1324, 1336 (Alaska 1975), for the proposition that inverse condemnation claims "are subject to the limitations periods for adverse possession or ejectment, whichever applies." 860 P.2d at 1240 n. 13. We stated:

> In *City of Anchorage v. Nesbett,* 530 P.2d 1324, 1336 (Alaska 1975), we rejected an argument that inverse condemnation actions may be time barred either through laches or a limitations period shorter than the statutory period provided for adverse possession. *We reaffirm our holding in Nesbett that such actions are subject to the limitations periods established for adverse possession or ejectment, whichever applies.* Under AS 09.10.030, the limitations period for ejectment is ten years. Under AS 09.25.050, a seven year period applies when the adverse possessor acquires possession "under color and claim of title."

*Burnett,* 860 P.2d at 1240 n. 13 (emphasis added).[10]

According to Lakeview, *Nesbett* supports the proposition that an inverse condemnation claim can only be barred if the government proves that it adversely possessed the complainant's property. In *Nesbett* the owner sued to compel the City to remove a power line from his property and to pay reasonable rental value for the use of the property.

Alternatively, the owner sought damages because the power lines impaired the economic use of the land. 530 P.2d at 1327. The City claimed it had a prescriptive easement for the power lines across the owner's property. *Id.* at 1327–28. We upheld the trial court's determination that the City's use of the property was permissive rather than adverse. *Id.* at 1330–32. We did not rule that proof of all elements for adverse possession is necessary to time-bar an inverse condemnation suit. Expiration of the statute of limitations is a distinct defense, and can be asserted separately from the defense that the defendant has adversely possessed the plaintiff's property.

We hold that Lakeview was obliged to file its inverse condemnation claim within the ten-year period prescribed by AS 09.10.030. Therefore, the trial court did not err in limiting recovery on that claim to any new or additional injury occurring within the ten years before Lakeview filed its complaint.

### 2. *Equitable estoppel*

■ Lakeview argues that the Borough was equitably estopped from asserting that the statute of limitations barred inverse condemnation claims pre-dating 1979. Lakeview's argument is without merit because critical prerequisites for equitable estoppel are absent. Lakeview relied on Urban Rahoi's affidavit to support its estoppel claim. That affidavit does not allege fraudulent conduct nor does it indicate that Lakeview resorted to legal action within a reasonable period after the circumstances ceased to justify the delay. *Gudenau & Co. v. Sweeney Ins., Inc.,* 736 P.2d 763, 769 (Alaska 1987). Likewise, the record does not permit a conclusion that Lakeview's reliance on the Bor-

---

10. In *Weidner,* 860 P.2d at 1212, we stated:
> The theory of prescriptive easement does *not* grant the State the affirmative authority to take property without just compensation. Rather, the prescriptive period—as with any statute of limitations—requires a private landowner to bring an inverse condemnation action for public use of private property within a specified period of time. At the end of the prescriptive period, the landowner's right to bring suit is extinguished, effectively vesting property rights in the adverse user. In the present case, Weidner's claim for just compensation has been

extinguished by expiration of the prescriptive period.

(Footnotes omitted.) In *Weidner* we upheld the trial court's determination that the state's reconstruction of a road that was originally built with a prior owner's permission, coupled with the expiration of the statutory ten-year period, constituted a prescriptive easement. *Id.* at 1209–11. We had no occasion to consider whether the State was required to demonstrate that it prescriptively acquired the complainant's property in order to bar the inverse condemnation claim.

ough's promises to clean up the landfill was reasonable.[11] *Id.* The trial court properly rejected Lakeview's equitable estoppel argument.[12]

### 3. *Evidence bearing on the inverse condemnation claim*

■ Lakeview has not adequately briefed the issue of whether the admitted evidence was sufficient to prevent a directed verdict. Lakeview essentially argues only that "[e]ven if the 1979 cut-off were applied, the directed verdict was still in error.... Dr. Mundy's analyses did not include pre–1979 damages." Dr. Mundy was Lakeview's expert appraiser. Our independent review of the record indicates that the evidence was not sufficient to avoid a directed verdict.

■ Because the statute of limitations barred recovery for harm predating April 18, 1979, to prevail on its inverse condemnation claim, Lakeview had to prove the Borough caused economic loss that exceeded the impairment predating April 18, 1979. Consequently, Lakeview had to prove that odors, flies and other effects from the landfill caused additional decline in the value of its property in the ten years preceding its April 18, 1989 complaint.[13] Phillip Rahoi testified that the landfill's impacts on the Lakeview property worsened after 1979. For example, Phillip testified that there were more rats, flies and gulls on the Lakeview property after 1979. Nonetheless, Lakeview offered no evidence of the value of these increased impacts and did not otherwise quantify any

incremental impact on the value of its property.[14]

The only valuation evidence Lakeview presented to support its inverse condemnation claim was the testimony of Dr. Mundy, its expert appraiser. However, as counsel for Lakeview candidly conceded at oral argument, Mundy calculated Lakeview's damages by comparing the value of a totally unimpaired trailer park with the value of the Lakeview property at the time of trial. Mundy did not compare the value of the Lakeview property at the time of trial with its value on April 18, 1979, when it was already impaired, and thus did not quantify the incremental impact for the relevant period.

The admitted evidence was insufficient to require the court to submit the inverse condemnation claim to the jury.

### 4. *Limiting expert testimony*

■ Lakeview argues that the trial court erred in limiting Mundy's expert testimony and that consequently a new damages trial is required. The court limited Mundy's opinions following a prolonged dispute about the adequacy of Lakeview's pretrial disclosure of Mundy's opinions and proposed testimony. The trial court did not abuse its discretion. To understand why, it is necessary to review the dispute in some detail.

Lakeview filed its lawsuit on April 18, 1989, and ultimately sought over thirty-two million dollars in damages. The Borough sent discovery requests to Lakeview in De-

---

11. Since the "early 1970's," Lakeview had made "numerous" complaints to the Borough about the landfill, and had received "numerous" promises from the Borough to correct the problems. Lakeview threatened to sue the City in 1972 and the Borough in 1981 because of the landfill. Based on Lakeview's own assertions that the Borough took inadequate precautions to alleviate the long-standing and worsening effects of the landfill on neighboring property, Lakeview could not reasonably believe the Borough would eliminate the problem.

12. Because the essential elements of an equitable estoppel claim are lacking, we decline to consider the Borough's argument that a higher standard of proof is required when equitable estoppel is asserted against the government.

13. *See City of Anchorage v. Sandberg,* 861 P.2d 554, 558–59 (Alaska 1993) (defining a taking under principles of inverse condemnation); *Homeward Bound v. Anchorage Sch. Dist.,* 791 P.2d 610, 614 (Alaska 1990) ("private property is taken or damaged for constitutional purposes if the government deprives the owner of the economic advantages of ownership"); *State v. Doyle,* 735 P.2d 733, 735 (Alaska 1987) ("taking" requires proof of the deprivation of economic benefits to the owner).

14. We note that the Rahois did not themselves offer opinions about any diminution in value of the Lakeview property after 1979. An owner's opinion on the topic of property value is normally admissible in Alaska. *See Schymanski v. Conventz,* 674 P.2d 281, 286 (Alaska 1983).

cember 1990 seeking an explanation of Lakeview's damage calculations and production of supporting documents. The requested information was potentially relevant to the condemnation claim with respect to the date of taking, the limitations defense, and the amount of damages. Lakeview did not respond; the Borough moved to compel. The parties initially stipulated to hold the motion in abeyance until the Borough could examine Lakeview's records. Lakeview understood the Borough's first discovery requests to encompass appraisals of Lakeview's property.

When Lakeview failed to provide relevant documents as promised, the Borough renewed its motion to compel. The trial court granted the motion on September 12, 1991, ordered production, and also ordered Lakeview to pay $270 in attorney's fees.

On October 13 the Borough served a second, more detailed, request for production seeking appraisals, economic reports and other documents reflecting a landfill-caused diminution in the value of Lakeview property.

In March 1992 the trial court issued a pretrial order requiring that expert witnesses be listed and their opinions disclosed by August 28. The order specified that general discovery would close August 31 and that experts could be deposed no later than October 16. Trial was to begin the week of May 3, 1993.

The Borough had difficulty obtaining the documents sought in its second request for production and in June 1992 again moved to compel. It also moved to bar Lakeview from presenting evidence that Lakeview had failed to produce in discovery. Those motions were unresolved as of August 26, 1992, when the Borough deposed Mundy. Mundy testified at his deposition that he had not yet calculated damages but had performed a preliminary analysis of the unimpaired value of the Lakeview property. Lakeview gave Mundy's preliminary analysis to the Borough at the Mundy deposition. Mundy had transmitted his preliminary analysis to Lakeview's attorneys by letter of September 10, 1991, nearly one year before it was first produced to the Borough on August 26, 1992. As the pretrial order required, Lakeview disclosed Mundy's anticipated opinions on August 28. The outline contained specific damages calculations.

In September 1992 the Borough moved to preclude Mundy's testimony on the ground Lakeview failed to produce his 1991 appraisal until the day of his August 26 deposition, although the appraisal was encompassed by the Borough's December 1990 request and the court's September 12, 1991 order compelling discovery. Two days after the Borough filed its motion, Lakeview gave the Borough a letter from Mundy to Lakeview's counsel. The letter was dated August 28, 1992 and contained an opinion that differed from Mundy's 1991 analysis.

On October 5 the trial court sua sponte scheduled a hearing to address discovery problems. At the hearing the court again instructed Lakeview to produce "immediately" all previously-requested documents and ordered it to produce within forty-eight hours all documents relied upon or created by Mundy that were previously identified as being located in Mundy's office. The court ordered Lakeview to make Mundy and another witness available for redeposition and required Lakeview to pay all costs and attorney's fees associated with the redepositions and the Borough's September motion to compel. The trial court warned Lakeview of the danger of a preclusion order: "If there's any further difficulty in obtaining information from Mr. Mundy, a preclusion order will enter. The plaintiffs are about one centimeter away from a preclusion order at this point."

Mundy was to be redeposed October 9, 1992. On October 8 the Borough received from Mundy all documents he relied upon in reaching the opinions disclosed in Lakeview's August 28 outline. The Borough's attorney and appraiser reviewed the documents in preparation for the Mundy redeposition. Before Mundy's October 9 redeposition began, however, Lakeview's counsel told the Borough's attorney that Mundy had prepared yet another set of documents that were "essentially a tabular presentation of Dr. Mundy's earlier analysis," with one substantive change. These new documents were then faxed to the Borough's attorney while he was

redeposing Mundy. During a deposition recess, the Borough's appraiser advised the Borough's attorney that the documents contained a significantly different valuation analysis from that used in either the August 28 opinion or the Mundy letter previously provided to the Borough. The unimpaired value of the land changed by more than two million dollars and the damages calculation changed by more than three million dollars. The Borough then suspended Mundy's deposition and filed a motion to preclude Mundy's testimony because it violated the court's pretrial and October orders, even though Lakeview offered to reschedule the deposition.

In moving for preclusion, the Borough argued that for more than a year it had unsuccessfully tried to obtain evidence of Lakeview's economic damages claims. Lakeview responded that the pretrial order and the October 1992 order did not preclude Mundy from refining his opinion after the August 28 disclosure. The trial court was not persuaded that the changes simply refined or modified Mundy's previously-disclosed opinion and found Lakeview's explanation "disingenuous." The court entered an order October 30, stating in part:

> The deadline for disclosure of the expert's opinion is just that. It does not contemplate disclosure of only preliminary material, a preliminary estimation, initial findings, or an initial draft. It does not contemplate subsequent substantial elaboration, refinements of analyses, modifications, newly disclosed development plans, or changes in the size and scope of these new plans.
>
> Lakeview must be held to these deadlines. It cannot be rewarded for its abuse of the discovery process or the inexcusable tardiness of its expert. It must be stripped of any advantage it might gain by these practices. And, its attorneys must be deterred from engaging in or facilitating these practices.
>
> IT IS THEREFORE ORDERED that the Borough's motion is granted, in part. Lakeview, at the Borough's option, will be

precluded from using any opinions or materials inconsistent with the opinion on damages and the supporting facts as they were provided to the Borough on August 28, and September 24, 1992, or the materials produced on October 8, 1992. . . . If the Borough wishes, it may re-depose Mr. Mundy. All expenses associated with the re-taking of the deposition shall be borne by Lakeview.[15]

The Borough also filed a separate motion in October to preclude Mundy's testimony because his opinion was erroneously based on a 1989 taking date. Lakeview acknowledged in response that Mundy's previously-expressed opinions were erroneous and advised the Borough that Lakeview would provide still another analysis, this one using an April 19, 1979 taking date. The court denied the Borough's motion in December, but did not address the propriety of any subsequent revised analysis by Mundy employing a 1979 taking date.

In March 1993 Lakeview produced a revised Mundy analysis. It was also flawed. The calculations for the 1979 impaired versus unimpaired analysis that were omitted from the earlier opinions were again omitted. This omission was in part due to a clerical mistake and in part because Lakeview's attorney appears to have not yet communicated the necessity of this analysis to Lakeview's expert. The revised report again failed to take into account the existence of the landfill prior to April 19, 1979. According to Mundy, "the unfortunate thing is, . . . [the 1979 calculations] . . . didn't get into the report. I was not at my office when the final report was put together, and the 1979 information inadvertently was left out." The trial court indicated it would exclude the 1993 analysis produced in March because it did not comply with the October 30, 1992 order. As Lakeview admitted, the 1993 analysis was inconsistent with the court's 1991 ruling that Lakeview was barred from recovering based on the existence and location of the landfill, conditions that predated the complaint by more than ten years.

---

**15.** Despite the court's order, Lakeview refused to allow the Borough to redepose Mundy. A week before trial was to begin, the court ordered Lakeview to make Mundy available for deposition without any conditions.

At trial, Mundy attempted to testify to a still different valuation. For the first time, Mundy attempted to determine damages by subtracting the pre–1979 damages.[16] Mundy admitted the report produced in March 1993, and by implication each of his earlier reports, did not take into account the property's impaired, as opposed to unimpaired, value in 1979. Therefore, when Mundy attempted to testify at trial about the 1979 value, the court ordered that testimony stricken.

Lakeview contends that it was faced with a "Hobson's choice." It either had to use an incorrect valuation date or it had to change the analysis, contrary to the court's order precluding testimony inconsistent with Mundy's pre-October 9, 1992 analysis. Lakeview argues that the trial court erred by excluding the March 1993 report and by preventing Mundy from modifying his opinion at trial, and that the court effectively forced Mundy to testify to an erroneous opinion.

Lakeview relies upon *Grimes v. Haslett*, 641 P.2d 813 (Alaska 1982), to support its contention that the trial court should have ordered a continuance to allow the Borough to defend against Mundy's "modified" opinion, instead of preventing him from changing his analysis.[17] *Grimes* is not dispositive; it supports the Borough's argument that the trial court did not abuse its considerable discretion in excluding or limiting Mundy's testimony.

Another decision illustrates the trial court's discretion in excluding evidence following a discovery violation. In *State v. Guinn*, 555 P.2d 530 (Alaska 1976), we affirmed the trial court's exclusion of testimony after a party inadvertently failed to comply with a discovery order. The State there failed to produce the requested notebooks of a state trooper who investigated an accident; the trial court struck the trooper's testimony regarding accident measurements because the trooper had no independent recollection of the measurements contained in the unproduced notebook. We held that a showing of "wilful" disobedience was not required in order to preclude a witness' testimony. *Id.* at 543.

In *Guinn*, we distinguished between a "devastating establishment-preclusion order" and the "far less drastic" remedy of precluding testimony. *Id.* We have previously noted the difference between the "extreme" sanction of striking an answer or complaint, and the sanction of limiting or excluding evidence as a result of a discovery violation. *See Dade v. State, Child Support Enforcement Div. ex rel. Lovett*, 725 P.2d 706, 708 (Alaska 1986). Here, the trial court did not impose "litigation ending" sanctions, but rather prevented Mundy from testifying in a manner inconsistent with his pre-October 1992 opinion.

Likewise, in *Drickersen v. Drickersen*, 604 P.2d 1082 (Alaska 1979), we upheld the trial court's exclusion of an expert's new opinions offered for the first time at trial. In his pretrial deposition, the expert testified he had reached only "preliminary conclusions" that were subject to change. The opinion he proffered at trial had not previously been disclosed. *Id.* at 1087.

 *Guinn* and *Drickersen* support the exclusion of Mundy's post-October 1992 opinions and testimony.[18] The trial court did

---

16. In reaching his March 1993 valuation, Mundy computed the value of the Lakeview property with and without the landfill in 1979 and subtracted the difference from the impaired minus the unimpaired value of the property in 1993.

17. In *Grimes,* the plaintiff failed to supplement responses to interrogatories as required by Alaska R.Civ.P. 26(e), and the trial court granted the defendant an extension of time to prepare to refute a doctor's opinion that had changed during the course of three examinations of the plaintiff. Although we found that the trial court's decision to grant the continuance was reasonable and was not an abuse of discretion, we also recognized that a trial court has the discretion to exclude testimony if there have been discovery failures. *Id.* at 821–23. "Its decision in these matters will only be overturned upon an abuse of discretion." *Id.* at 822.

18. Exclusion of the March 1993 report was proper both as a discovery sanction and because it contained a fundamentally erroneous valuation date. Even though it excluded the March 1993 report, the trial court considered its contents before directing a verdict on the inverse condemnation claim. As to Mundy's proffered trial testimony, Lakeview failed to make an offer of proof regarding the proposed changes to Mundy's testi-

not abuse its discretion by excluding the March 1993 analysis and refusing to allow Mundy to change his opinion at trial.[19]

> 5. *Trial court's decision to consider only the Borough's non-negligent conduct in assessing the inverse condemnation claim*

■ Lakeview claims that the trial court erred by refusing to consider inverse condemnation damages caused by the Borough's "improper, unlawful, or negligent maintenance or operation of the landfill." According to the trial court, "Lakeview must prove a taking in this regard by showing quantitative or qualitative change attributable to the Borough's non-negligent interference which results in a measurable loss of market value sustained during the ten years preceding commencement of the suit."

■ It is not necessary to consider whether the trial court erred in concluding that only "non-negligent" activities can be considered in assessing an inverse condemnation claim. Any error was harmless. *Cf. Poulin v. Zartman*, 542 P.2d 251 (Alaska 1975), *on rehearing*, 548 P.2d 1299, *disavowed on other grounds, State v. Alex*, 646 P.2d 203, 208 n. 4 (1982). The trial court properly directed a verdict on the inverse condemnation claim in the absence of sufficient evidence to permit the jury to conclude the Borough impaired the value of the property after 1979. Further, by special verdict form, the jury found that the Borough was negligent between 1987 and the time of trial, but that the Borough's negligence did not cause Lakeview's injuries. That finding is necessarily conclusive regarding causation for a negligence-based inverse condemnation claim during the same time period. Further, Lakeview elicited evidence supporting its assertion that impacts on its property from the landfill worsened over time and that the effects were especially bad after 1987. Given that evidence, the jury which found that Borough negligence had caused Lakeview no damage from 1987 onward also would have been compelled to find a lack of causation regarding Borough negligence before 1987.[20] Consequently, any error in failing to allow the jury to consider Borough negligence in deciding Lakeview's inverse condemnation claim must be considered harmless.[21]

### B. *Jury Instructions*

Lakeview contends that the jury instructions erroneously failed to inform the jury that Lakeview could recover damages for nuisance and negligence from April 1989, when it filed its complaint, until the time of trial in 1993.[22] This contention is without merit. Lakeview confuses the period for establishing liability with the period for which damages are recoverable. The instructions correctly defined the time period within which any acts constituting negligence or creating a nuisance had to occur. The instructions did not limit Lakeview's damages to those suffered in the two years before Lakeview filed its complaint. The instructions specifically provided that damages could be recovered until "the present."[23]

■ Moreover, any possible error was harmless because the jury found there was no nuisance and also found that Lakeview's

mony, and consequently failed to preserve the issue for appeal. *Agostinho v. Fairbanks Clinic*, 821 P.2d 714, 717 (Alaska 1991).

19. The Borough argues that the trial court should have precluded all of Mundy's testimony. The trial court did not abuse its discretion by allowing Mundy to express opinions consistent with opinions timely disclosed to the Borough.

20. To the extent Lakeview is objecting to the trial court's exclusion of evidence of pre–1987 negligence, Lakeview made no offer of proof regarding the excluded testimony, and therefore did not preserve the issue on appeal. *Agostinho*, 821 P.2d at 717.

21. The Borough's argument that the trial court erred in denying its summary judgment motion on the inverse condemnation and nuisance claims is moot because the Borough prevailed on those issues at trial and the trial court's decision with respect to those issues is affirmed.

22. "An erroneous statement of law in a jury instruction will not constitute reversible error unless it prejudiced one of the parties." *Grimes*, 641 P.2d at 818.

23. The instructions on negligence and nuisance damages likewise did not limit Lakeview's damages to those accruing as of the date Lakeview filed its complaint.

damages, if any, were not caused by the Borough's negligence. *See Zoerb v. Chugach Elec. Ass'n, Inc.,* 798 P.2d 1258, 1262 n. 7 (Alaska 1990) (holding that any error in punitive damage instructions was harmless because the jury found for defendants).

■ Lakeview next complains that the trial court erred in instructing the jury about the impact of violations of certain sanitary regulations.[24] The court gave the following instruction:

Department of Environmental Conservation regulations provide that a person who owns or operates a landfill shall ensure that the solid waste is compacted in two foot increments, and covered with six inches of cover on a daily basis.

If you decide that it is more likely true than not true that the Borough violated this regulation then you are required to find the [Borough] negligent in respect to the specific acts that constituted such violation.

Lakeview argues that the court erred in failing to instruct the jury that it could hold the Borough liable for the acts of Environmental Recycling Incorporated (ERI), the operator of the landfill, even though ERI was an independent contractor.[25] Lakeview unsuccessfully sought an instruction based on Restatement (Second) of Torts § 424 (1986). Lakeview concedes we have not adopted § 424 as an exception to the usual rule that an employer of an independent contractor is not liable for the torts of the independent contractor.[26]

Because any possible error was harmless, it is not necessary to decide whether the trial court erred in declining to give the requested instruction. First, it is undisputed that the Borough owned the landfill during the entire time ERI operated the facility. Under 18 AAC 60.035, the Borough, as owner, would have been liable if ERI violated any sanitary regulations. The court instructed the jury that the Borough would be liable for regulatory violations occurring while the Borough owned the landfill. The independent contractor instruction was unnecessary.

■ Second, although it found the Borough negligent, the jury found by special verdict that the Borough's negligence was not a legal cause of Lakeview's claimed damages. Any error in failing to provide an alternative basis for finding the Borough negligent must be considered harmless.[27] We therefore reject Lakeview's argument that instructional errors require a new trial.[28]

### C. The Borough's Cross-Appeal

#### 1. The characterization of Lakeview's nuisance claim

■ The Borough asks us to characterize Lakeview's nuisance claim as permanent to prevent future Lakeview claims. However, the jury found that there was no

24. The general requirements for operating a solid waste disposal facility are found in 18 Alaska Administrative Code (AAC) 60.035. This regulation applies to persons who own or operate a solid waste disposal facility. *Id.*

25. Lakeview does not dispute that ERI operated the landfill during 1987 until 1989.

26. Restatement (Second) of Torts § 424 provides:

One who by statute or administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

27. The jury did not answer that portion of the special verdict form which asked whether it found the Borough negligent "during the periods

that the landfill was operated by ERI," and Lakeview did not request clarification or an instruction that the jury answer that question. Lakeview consequently failed to preserve this issue for appeal. Alaska R.Civ.P. 51(a).

28. Lakeview also argues that the trial court erred in allowing the Borough to ask leading questions of a witness even though Lakeview called the witness as a "hostile" witness. Trial courts are granted "almost unlimited discretion" in determining the order of proof at trial. *American Nat'l Watermattress Corp. v. Manville,* 642 P.2d 1330, 1339 (Alaska 1982) (referring to Evidence Rule 611, governing the use of leading questions in Alaska). Lakeview does not allege that the trial court's rulings regarding the use of leading questions denied it a fair trial, nor does Lakeview claim that it is entitled to a new trial because of the leading questions. Therefore, the issue is not reviewable. *McCormick on Evidence,* § 6, at 18–19 (4th ed. 1992).

nuisance. The Borough is not entitled to a declaration on an issue mooted by the verdict and our affirmance. And to the extent the Borough claims the jury instructions mischaracterized the nuisance claim, the Borough's failure to object also bars appellate review. Alaska R.Civ.P. 51(a).

### 2. *The Borough's offer of judgment*

 Lakeview did not accept a Civil Rule 68 offer of judgment made by the Borough; the judgment was not more favorable than the offer. The Borough argues that the trial court erred in concluding that it was unable to consider the unaccepted offer of judgment in awarding attorney's fees against Lakeview pursuant to Civil Rule 82.

The trial court found that the Borough was the prevailing party and that the Borough's total fees of $269,969.77 were reasonable. Notwithstanding those findings and the Borough's defense verdict, the court declined to enhance the Borough's attorney's fee award. Rule 68 provides in relevant part:

(a) At any time more than 10 days before the trial begins, either the party making a claim or the party defending against a claim may serve upon the adverse party an offer to allow judgment to be entered in complete satisfaction of the claim for the money or property or to the effect specified in the offer, with costs then accrued. . . .

(b) If the judgment finally rendered by the court is not more favorable to the offeree than the offer, the prejudgment interest accrued up to the date of judgment is entered shall be adjusted as follows:

(1) if the offeree is the party making the claim, the interest rate will be reduced by the amount specified in AS 09.30.065 and the offeree must pay the costs and attorney's fees incurred after the making of the offer (as would be calculated under Civil Rules 79 and 82 if the offeror were the prevailing party). The offeree may not be awarded costs or attorney's fees incurred after the making of the offer.

In briefing this issue, the parties cite various decisions of this court pre-dating amendments to Civil Rule 82. Those amendments became effective July 15, 1993. The trial court's attorney's fees order was dated August 11, 1993. The record does not reveal whether the trial court considered the effect of the 1993 amendments, which allow the trial court to consider various factors to determine whether to vary from awards calculated per the rates set out in Civil Rule 82(b)(1) and (2). *See* Civil Rule 82(b)(3).[29] Given these amendments, our pre-amendment decisions discussing the impact of a successful Rule 68 offer on attorney's fees awards have limited application.[30]

---

**29.** As amended, Civil Rule 82(b)(3) provides:
(3) The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
(A) the complexity of the litigation;
(B) the length of trial;
(C) the reasonableness of the attorneys' hourly rates and the number of hours expended;
(D) the reasonableness of the number of attorneys used;
(E) the attorneys' efforts to minimize fees;
(F) the reasonableness of the claims and defenses pursued by each side;
(G) vexatious or bad faith conduct;
(H) the relationship between the amount of work performed and the significance of the matters at stake;
(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;

(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and
(K) other equitable factors deemed relevant.
If the court varies an award, the court shall explain the reasons for the variation.

**30.** *See Hutchins v. Schwartz,* 724 P.2d 1194, 1203 (Alaska 1986) (holding that Rule 82 subsumes Rule 68 where a defendant who betters his offer of judgment prevails at trial); *Wickwire v. State,* 725 P.2d 695, 703–04 (Alaska 1986) (holding that a defendant who ultimately fares better than its Rule 68 offer is entitled only to partial compensation for post-offer attorney's fees); *Wright v. Vickaryous,* 611 P.2d 20, 23 (Alaska 1980) (rejecting the argument that Rule 68 only applies when an offeree obtains judgment in his or her favor).

Considering the relationship between Rule 82 as amended in 1993 and Rule 68, we conclude that when a trial court awards fees it may, but need not, take into account the existence of an unaccepted Rule 68 offer if the claimant-offeree fails to better the offer.[31] Because the trial court believed that it was unable to consider the Borough's successful Rule 68 offer, we remand so the trial court can consider whether to increase the attorney's fees award in light of the Borough's successful offer.[32]

### 3. Attorney's fees in favor of the City

■ After Lakeview sued the Borough, the trial court permitted the Borough to file a third-party complaint against the City notwithstanding Lakeview's argument that any claims Lakeview had against the City "expired long ago." The trial court later granted summary judgment to the City, ruling that the Borough's third-party claims were barred by the statute of limitations. The court entered final judgment for the City pursuant to Civil Rule 54(b).[33]

■ The Borough argues that the trial court erred in ordering the Borough to pay part of the City's attorney's fees incurred in defending against the Borough's third-party complaint.[34] It states that "[w]hen a third-party defendant successfully defends against a derivative claim, the trial court has the discretion to award attorneys fees in favor of that defendant directly against the principal plaintiff." While no party disagrees with this statement, the City and Lakeview maintain that the trial court was not required to award the City fees against Lakeview, and that the trial court did not abuse its discretion in awarding fees to the City against the Borough. We agree.

Even though the Borough's perceived need to file a third-party complaint was fueled by Lakeview's statements regarding damages and by the trial court's rulings regarding the statute of limitations, the City prevailed on the Borough's third-party claims. It was appropriate to award the City fees against the Borough, the party which began the third-party action. Because the primary dispute in this case was between Lakeview and the Borough, not Lakeview and the City, the trial court did not abuse its discretion by imposing the City's award against the Borough and not against Lakeview. Cases such as *State ex rel. Palmer Supply Co. v. Walsh*, 575 P.2d 1213 (Alaska 1978), relied upon by the Borough, are inapplicable.[35] We find no error.

---

**31.** Lakeview concedes that the trial court has the discretion to increase an attorney's fees award based on a Rule 68 offer.

**32.** We do not mean to imply that the existing award is inadequate or that an additional award is required.

**33.** The Borough filed a separate appeal from the trial court's entry of final judgment in favor of the City, the denial of the Borough's Rule 59(f) motion, and the award of attorney's fees to the City against the Borough. Except for the attorney's fees issue, all other issues briefed in that appeal are rendered moot by our resolution of Lakeview's appeal.

**34.** We review the trial court's allocation of attorney's fees among the parties for an abuse of discretion. *State ex rel. Palmer Supply Co. v. Walsh*, 575 P.2d 1213, 1221 (Alaska 1978).

**35.** In *Palmer Supply Co.*, a supplier of materials brought a state Miller Act claim against a general contractor's payment bond and the general contractor impleaded the subcontractor that was responsible for paying the supplier. 575 P.2d at 1216. The trial court found that the supply company was not entitled to payment and ruled that the supply company had to pay the subcontractor's attorney's fees. *Id.* In upholding the trial court's award this court noted that

> the realities of this kind of litigation are that the prime contractor and his surety will implead the party which may ultimately have to pay the judgment or which has knowledge of the facts necessary for the defense of the action.

*Id.* at 1220–21.

The Borough's reliance on *Moses v. McGarvey*, 614 P.2d 1363 (Alaska 1980), is also misplaced. In that case a shareholder brought suit against a corporation, its president (Moses) and the president's daughter. The corporation asserted no claim against Moses. This court upheld the trial court's decision that Moses, as an individual co-defendant, should pay the shareholder's costs and attorney's fees. We upheld the award because Moses was the most blameworthy of the defendants. *Id.* at 1367–71. However, we overturned the trial court's award of full shareholders' attorney's fees against Moses and found that Moses was not responsible for the attorney's fees of the co-defendant corporation. The corporation did not bring an action against Moses, therefore, it could not "prevail" over him. *Id.* at

## IV. CONCLUSION

The court did not err in directing a verdict on Lakeview's inverse condemnation claim. Lakeview presented insufficient evidence to submit that claim to the jury. The trial court did not err in applying the ten-year statute of limitations to Lakeview's inverse condemnation claim. It did not err in preventing Lakeview's expert from changing his opinion at trial. Further, any error in limiting the inverse condemnation claim to the Borough's non-negligent conduct was harmless, as was any possible error regarding the jury instructions. The judgment against Lakeview is AFFIRMED.

We REMAND for consideration of the effect of the Borough's successful offer of judgment on the Borough's claim for attorney's fees. The remaining issues raised by the Borough's cross-appeal against Lakeview are moot.

The attorney's fees award in favor of the City against the Borough is AFFIRMED.

**M.R.S., Petitioner,**

v.

1373. *Moses* does not help the Borough because in the present dispute, Lakeview did not sue both the Borough and the City; they were consequently not co-defendants.