**Wilfred LANE, Appellant,**

v.

**CITY OF KOTZEBUE, Appellee.**

**No. S–8357.**

Supreme Court of Alaska.

July 9, 1999.

---

**16.** 3A *Corbin on Contracts* § 655B, at 116–17 (1999 Supp.).

**17.** *See id.*

C.R. Kennelly, Stepovich, Kennelly & Stepovich, Anchorage, for Appellant.

Jerald M. Reichlin, Fortier & Mikko, P.C., Anchorage, for Appellee.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## O P I N I O N

EASTAUGH, Justice.

### I. INTRODUCTION

Wilfred Lane sued the City of Kotzebue for shutting off his water and installing water and sewer lines on his property without permission. He alleged negligence, trespass, and nuisance. The superior court granted summary judgment for the City. Lane appeals. We reverse because Lane has demonstrated both that there are genuine issues of material fact with respect to his negligence case, and that the superior court erred by entering a final judgment dismissing his inverse condemnation claim absent a motion for dismissal of that claim.

### II. FACTS AND PROCEEDINGS

In the spring of 1992 Wilfred Lane discovered water seeping from the ground between his house and a neighboring house. Lane, a resident of the City of Kotzebue, called the City's Department of Public Works. Upon inspection, the Department concluded that the leak originated from Lane's service line. Although it had previously assisted Lane with water problems, the City now refused to do so. Instead, it shut off Lane's water supply to prevent the City's main lines from being damaged by freezing or loss of water pressure in Lane's lines.

Consequently, Lane's water and sewer lines froze, forcing the seventeen-member Lane family to use an alternative water supply and honey buckets. When Lane complained to the City, the City offered to repair Lane's system. In exchange for the repair, the City requested an easement for water and sewer lines it had installed under Lane's property over ten years prior. Lane rejected this offer.

Lane then sued the City. He alleged negligence and nuisance with regard to the water shutoff and trespass with regard to the water and sewer line installation. The City moved for summary judgment on all claims.

The superior court dismissed Lane's negligence claim but denied summary judgment on the nuisance claim. It also noted that Lane's trespass claim should have been a claim for inverse condemnation, denied summary judgment to the City as to the trespass claim, stated that "the matter is not dismissed," and gave Lane an opportunity to amend his complaint. Lane did not amend his complaint.

After an unsuccessful attempt at mediation, the City renewed its motion for summary judgment on the nuisance claim. In response, Lane moved for a continuance under Alaska Civil Rule 56(f), but otherwise did not oppose summary judgment. The court then entered a "Final Order" denying Lane's

request for a continuance, granting summary judgment to the City on the nuisance claim, and dismissing "this matter." Lane appeals the dismissal of his negligence and inverse condemnation claims. He does not appeal from the dismissal of his nuisance claim.

## III. DISCUSSION

### A. Standard of Review

We review a grant of summary judgment de novo.[1] We will affirm a grant of summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2] We may affirm a superior court's grant of summary judgment on any basis appearing in the record.[3] We review de novo as a question of law whether the superior court erred by entering the final order, effectively dismissing Lane's inverse condemnation claim.[4]

### B. Did the Superior Court Improperly Dismiss Lane's Negligence Claim?

■ Lane asserts that the court improperly granted summary judgment to the City on his negligence claim. Because he demonstrated the existence of a genuine issue of material fact, we agree.

In seeking summary judgment, the movant must make a prima facie showing demonstrating the absence of any genuine issue of material fact.[5] Once the movant has made this showing, the non-movant must respond by demonstrating the existence of a genuine issue of material fact bearing on each of its claims.[6] The court must resolve all reasonable inferences in favor of the non-moving party.[7]

Lane based his negligence claim on an assertion that the City negligently connected his water line to the water line of Abe Ho-

warth's neighboring house, thereby triggering the problems that caused the seepage he discovered in the spring of 1992. Because he has offered no other basis for linking the City's actions to his line failure, Lane's negligence claim depends on the existence of this interconnection.

The City offered as-built drawings depicting the absence of an interconnection. The City employee who serviced Lane's line and installed Howarth's line affied that the lines did not connect. The same employee and the City's public works director also affied that they had never seen lines configured in the fashion envisioned by Lane's complaint.

To overcome the City's prima facie showing, Lane had to produce evidence reasonably tending to dispute or contradict the City's evidence.[8] Lane submitted a transcript of his deposition, where he testified that he was informed by City employees that the lines were interconnected:

Q. What I'm trying to focus on is your line and Mr. Howarth's line. And I'm asking you, how do you know that they are joined together?

A. That understanding, what Randy [Walker] and Charles [Foster] explained to me, because they were there working up a storm and they were.

Q. So the best—so the reason that you think so is because that's what you were told by the City's workers?

A. Yeah, yeah.

Q. When you spoke to the Public Works director in 1994, did he tell you that the two lines were connected?

A. To the best of my knowledge, yes, because he said—I was going to write a letter to the City about that. That's

1. See Nielson v. Benton, 903 P.2d 1049, 1052 (Alaska 1995).

2. See In re Estate of Evans, 901 P.2d 1138, 1140 (Alaska 1995).

3. See Wright v. State, 824 P.2d 718, 720 (Alaska 1992).

4. See Ford v. Municipality of Anchorage, 813 P.2d 654, 655 (Alaska 1991).

5. See Yurioff v. American Honda Motor Co., 803 P.2d 386, 389 (Alaska 1990); see also Alaska R. Civ. P. 56.

6. See Brock v. Rogers & Babler, Inc., 536 P.2d 778, 782–83 (Alaska 1975).

7. See Bishop v. Municipality of Anchorage, 899 P.2d 149, 153 (Alaska 1995).

8. See Yurioff, 803 P.2d at 389.

the first time I ever find [sic] out about that too myself where they explained to me that those two houses were connected to my property.

Q. The Public Works director told you that they were connected?

A. Yeah, not only him but also Charles and Randy.

We consider this testimony, and a similar passage elsewhere in his deposition, sufficient to create a question about the existence of an interconnection. In resolving all reasonable inferences in Lane's favor, we assume the existence of an interconnection and therefore allow the possibility that Lane's theory of negligence is correct.[9]

 Without explicitly addressing the issue, the superior court may have assumed that the statements Lane described in his deposition were inadmissible hearsay. But an out-of-court statement offered for the truth of the matter asserted is not hearsay if it is an admission by a party-opponent under Alaska Rule of Evidence 801(d)(1). The statements Lane described were uttered by City employees during the course of their employment and concerned matters that clearly fell within the scope of their duties as they described them in their affidavits. Randy Walker stated that he was involved with the "installation, maintenance, repair, connection, disconnect and reconnect of water lines and sewer lines for the City"; Herman Reich, the Public Works Director, stated that he was responsible for the "care and maintenance of the City's water and sewer utilities." To be admissible, the statements Lane described did not have to be authorized by the employer; it was enough that they concerned the employees' duties.[10] Nor did they have to be based on first-hand knowledge.[11] They met the requirements of Rule 801(d)(1).

Citing *Yurioff v. American Honda Motor Co.*,[12] the City challenged the sufficiency of Lane's evidence. Yurioff's case turned on the date of the accident giving rise to his claim; the date determined whether the statute of limitations barred his claim. By submitting medical records, depositions of the treating medical personnel, and testimony by Yurioff admitting that the accident probably occurred on that date, American Honda made a prima facie showing that the accident had occurred on March 19, 1985.[13] To counter this evidence, Yurioff offered only an affidavit stating that he believed the accident had occurred on March 20.

We affirmed dismissal of Yurioff's lawsuit, remarking that a prima facie showing cannot be rebutted with a mere scintilla of contrary evidence:

To be sure, this statement rendered equivocal Yurioff's admission that the accident occurred on March 19. Indeed if a scintilla of contrary evidence were sufficient to create a genuine issue of fact, we would agree with Yurioff that summary judgment was improper. However, the question is whether Yurioff's equivocation "reasonably tend[ed] to dispute or contradict" authentic documentation of the date of the injury. We think that it did not.[14]

*Yurioff* is distinguishable from Lane's case. First, Yurioff established no plausible foundation for his equivocal and problematic recollection of the critical date, whereas Lane based his conflicting testimony on alleged admissions by City employees. Second, the evidence that conflicted with Yurioff's recollection originated with disinterested health care professionals who were not parties to Yurioff's litigation. But the drawings and affidavits the City offered were created or executed by City employees. We conclude that it was error to grant summary judgment to the City on Lane's negligence claim.

9. *See Bishop*, 899 P.2d at 153.

10. *See Klawock Heenya Corp. v. Dawson Constr./ Hank's Excavation*, 778 P.2d 219, 220 (Alaska 1989). *See also Knight v. American Guard & Alert, Inc.*, 714 P.2d 788, 794–95 (Alaska 1986); *Rutherford v. State*, 605 P.2d 16, 23–24 (Alaska 1979).

11. *See Rutherford*, 605 P.2d at 24–25.

12. 803 P.2d 386 (Alaska 1990).

13. *See Yurioff*, 803 P.2d at 389.

14. *Id.*

## C. *Dismissal of the Inverse Condemnation Claim*

■ Lane next argues that it was error to dismiss his claim for inverse condemnation. We agree.

In Count III of his original complaint, Lane asserted a claim for trespass. The City argued that the six-year statute of limitations for trespass barred this claim. Noting that Lane should have asserted a claim in Count III for inverse condemnation and not trespass, the superior court initially denied the City's motion for summary judgment on that claim. Rather than dismissing Count III, the superior court gave Lane an opportunity to amend his complaint to replace the trespass claim with a claim for inverse condemnation, but it set no deadline for the amendment. Lane never amended his complaint. When the court later issued a final order granting summary judgment on the nuisance claim, it stated that "there [were] no other outstanding issues" and dismissed "this matter." The final order addressed neither Count III nor any claim for trespass or inverse condemnation. The superior court did not explicitly dismiss Count III or any inverse condemnation claim, but by dismissing "this matter" the final order effectively dismissed Count III.

The court erred in dismissing Count III of Lane's complaint. The September 1997 order did not comply with the requirements of Alaska Civil Rule 41 for the dismissal of claims.[15] The court did not inform Lane that he had to amend his complaint to avoid dismissal. The court never formally dismissed Lane's trespass claim, and it is arguable that Lane's original pleading adequately asserted a claim of inverse condemnation. The City never moved to dismiss an inverse condemnation claim. The court never addressed such a claim on its merits, and never dis-

missed the trespass claim for failing to state a claim on which relief could be granted. Lane had no warning that the court might dismiss this claim before it entered the September 1997 final order. We therefore reverse.

## D. *Statute of Limitations*

According to the City, any error in dismissing the inverse condemnation claim was harmless because we can affirm dismissal on independent grounds.[16] The City first argues that the statute of limitations barred Lane's claim.

In support of its contention, the City cites *Fairbanks North Star Borough v. Lakeview Enterprises.*[17] We there applied the ten-year limitations period prescribed by AS 09.10.030 for real property disputes to Lakeview's inverse condemnation claim.[18] Because the City offered undisputed evidence that it installed the water and sewer lines in 1977 and 1978, it contends that AS 09.10.030 bars Lane's May 1995 claim.

In opposing summary judgment on his trespass claim, Lane argued in the superior court that the statute should run from the date of discovery rather than the date of installation.[19] He contended that leaks in the Howarth lines caused glaciation which caused Lane's lines to crack. He could not have discovered this hypothetical chain of causation until his line malfunctioned and the City workers allegedly disclosed to Lane in December 1991 the existence of an interconnection. For this reason, Lane asserts that his May 1995 complaint was timely.

■ We conclude that the portion of Lane's claim arising from discoveries occurring within the ten years before he commenced suit is not time barred. Lane directed his claim at the effects of the installation of the lines on his property, not at the initial

---

15. *See* Alaska R. Civ. P. 41(e) (providing for dismissal of a case for want of prosecution).

16. *See* Alaska R. Civ. P. 61; *see also Riley v. Simon*, 790 P.2d 1339, 1342 (Alaska 1990).

17. 897 P.2d 47, 54 (Alaska 1995).

18. *See id.* at 53–54. AS 09.10.030 provides that "[a] person may not bring an action for recovery of real property, or for the recovery of the pos-

session of it unless the action is commenced within 10 years."

19. In support, Lane cites *Bauman v. Day*, 892 P.2d 817, 827–28 (Alaska 1995), in which we held that purchasers' contract and fraud claims arising from vendors' misrepresentations were not time barred because the statute of limitations began to run on the date of discovery. We have not previously applied the discovery rule to inverse condemnation.

installation. Moreover, Lane could not reasonably be expected to have known about the interconnection until he spoke with City employees. Because Lane's claim is directed at the installation's secondary effects, which were not apparent until 1991, Lane's claim was timely.[20]

Our analysis is consistent with *Lakeview*, where a landfill allegedly caused continuing damages.[21] We there recognized that damages arising from any new or additional injury occurring within the ten years before suit was filed would not be barred by the ten-year limitations statute.[22] Similarly, the limitations period does not bar Lane from recovering for inverse condemnation damages caused by glaciation or freezing occurring within the ten years before he filed suit.

This approach also accords with the way courts in other jurisdictions treat the issue. They have held that the statute of limitations begins to run when the owner has reasonable notice or knowledge of the inverse condemnation:

> It can be difficult to determine exactly when the statute of limitations begins to run and when the owner's cause of action accrues since there is usually no specific date that can be shown as the date when the taking occurred. One rule that is applied is the tort rule providing that the limitations period begins to run on the date when the injury occurs or when the owner has reasonable notice or knowledge of the injury or damage to the land.[23]

### E. *Prescriptive Easement*

■ The City also argues that any possible error in dismissing Lane's inverse condemnation claim was harmless because the City has established a prescriptive easement.

■ A party may establish a prescriptive easement by demonstrating (1) continuous and uninterrupted use; (2) adverse rather than permissive use; and (3) openness of use.[24] The City claims it met those requirements. Neither party appears to dispute that the use was continuous and open. And the City argues that the use was adverse rather than permissive because construction of the lines involved dedication of State of Alaska funds, reflecting an expectation of unhindered future use rather than use subject to the owner's permission.[25] It claims that such a use would be openly adverse to Lane's interest.

Although the City's arguments appear superficially valid, they do not justify affirmance. The parties did not argue this issue in detail to either the superior court or this court, and the record does not allow us to hold that there are no genuine, material fact issues. Questions may exist about when Lane first knew or had reason to know of the installation. Tolling issues may arise. Neither party has discussed the history of the property's ownership. Lane may have been misinformed about the legal status of the Howarth lines. At one point, the City believed that it had a previously existing easement between the two properties when it installed the Howarth lines. It is conceivable that Lane may have been informed of the City's belief and relied on it. We therefore decline to rely on prescriptive easement in order to affirm.

### F. *Lane's Motion for a Civil Rule 56(f) Continuance*

Lane also argues that the superior court erred in denying his Civil Rule 56(f) continu-

---

**20.** Lane has not disputed that claims arising from the initial installation of the sewer (i.e., claims for the diminution in value created by its presence on his land) are time barred.

**21.** *See Lakeview,* 897 P.2d at 50–51.

**22.** *See Lakeview,* 897 P.2d at 54. Although we theoretically allowed the possibility of recovery, we affirmed a directed verdict against Lakeview on grounds of insufficient evidence. *See id.* at 55.

**23.** Eugene McQuillin, *The Law of Municipal Corporations* § 32.133 (3d ed.1991); *see also Junge-*

blut v. Parish of Jefferson, 485 So.2d 974, 978 (La.App.1986) (statute of limitations commenced running when owner discovered encroachment); *Knox County v. Moncier,* 224 Tenn. 361, 455 S.W.2d 153, 156 (1970) (statute of limitations commenced running when owner reasonably understood extent of injury to property).

**24.** *See Weidner v. State, Dep't of Transp. & Pub. Facilities,* 860 P.2d 1205, 1209 (Alaska 1993).

**25.** *See id.* at 1210.

ance motion.[26] This issue is moot because we reverse the judgment for other reasons.

## IV. *CONCLUSION*

Because Lane offered sufficient evidence to raise a genuine factual dispute about the existence of an interconnection, we RE-VERSE the grant of summary judgment dismissing his negligence claim. Because Count III of his complaint was never resolved, we also REVERSE the final order of September 1997 and REMAND for further proceedings.

**26.** Alaska Rule of Civil Procedure 56(f) provides: Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.