Brooke HARVEY and Donna Wiggins,
Appellants/ Cross–Appellees,

v.

Jason T. COOK, Appellee/
Cross–Appellant.

Nos. S–12414, S–12434.

Supreme Court of Alaska.

Dec. 21, 2007.

Darryl L. Thompson, P.C., Anchorage, for Appellants/Cross–Appellees.

David A. Golter, Golter & Logsdon, P.C., Palmer, for Appellee/Cross–Appellant.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

A mother and father disputed custody of their young son in proceedings before the superior court. The child's maternal grandmother unsuccessfully attempted to intervene in the custody dispute to pursue grandparental visitation. After a three-day custody hearing, the superior court awarded sole legal and primary physical custody to the father, and ordered the mother to pay child support. The superior court awarded the father custody knowing that the father would be stationed overseas for much of the next year while serving in the Air Force and planned to leave the child with his new wife during that time. The mother and grandmother challenge the custody award and denial of intervention. They also argue that the superior court erred in failing to address the mother's claim for back child support. The father challenges the support award in a cross-appeal. For the reasons explained below, we conclude that the superior court properly denied the grandmother's attempt to intervene and that the custody dispute is moot. We therefore affirm as to intervention and as to the custody determination. Because the mother failed to preserve the child support issue for appeal, we decline to address that issue. Finally, on the cross-appeal, we reverse the calculation of the mother's support obligation.

## II. FACTS AND PROCEEDINGS

### A. Facts

Brooke Harvey and Jason Cook had a romantic relationship when Brooke was sixteen and Jason was nineteen. Shortly after Jason enlisted in the U.S. Air Force, he learned that Brooke was pregnant. Jason's military service required him to move to Arizona before Brooke gave birth to the couple's son, Haiden, in August 2002. After moving to Arizona, Jason married and fathered a child with his new wife.

Because of Jason's absence, Brooke acted as Haiden's primary caregiver. After an extended period of unsettled living situations, Brooke moved with Haiden into the home of her mother, Donna Wiggins. In June 2004 Brooke gave temporary guardianship of Haiden to her half-sister, Brandy Simpson.[1]

### B. Proceedings

In January 2005 Brandy petitioned for custody of Haiden. Brooke, appearing pro se, filed a non-opposition to Brandy's petition for custody but Jason, represented by an attorney, did oppose it. Brooke also filed a cross-claim against Jason seeking back child support and part of her medical bills pursuant to our holding in *Matthews v. Matthews*.[2] Af-

---

1. The record does not make clear whether Jason was consulted about or approved of this decision.

2. 739 P.2d 1298, 1299 (Alaska 1987) (holding that even in the absence of a court order a

ter Superior Court Judge Beverly W. Cutler informed Brandy that as an aunt seeking custody against a parent she was unlikely to be awarded custody, Brandy withdrew her custody petition. Following Brandy's withdrawal, both Brooke and Jason sought custody of Haiden and a custody trial was set for April 26, 2006.

In January 2006 Donna Wiggins, Haiden's maternal grandmother, attempted to intervene in the custody dispute, claiming that she was entitled to intervene as a matter of right. Jason and Brooke separately opposed Donna's intervention,[3] arguing that the request for intervention was untimely. In March 2006 the superior court indicated its intention to deny Donna's motion to intervene and formally denied intervention at the beginning of the custody trial.

The custody trial spanned three days in late April and early May 2006. In August the court issued a decision in which it awarded sole legal and physical custody of Haiden to Jason. The court awarded Jason custody primarily because it found that Jason and his new wife could offer much greater stability than Brooke. The court made clear that it understood that Jason would be stationed overseas for most of the next year and that Jason's wife would be caring for Haiden in Arizona during Jason's absence.[4] However, the court concluded that these facts were not determinative of its custody decision. The court awarded Brooke reasonable supervised visitation and also permitted Donna to have visitation for "at least two times a year for up to three days in a row of [supervised] daytime visitation." The court ordered Brooke

to pay fifty dollars per month in child support.

Brooke and Donna filed a joint pro se appeal. They argue that the superior court erred in granting custody to Jason and by not addressing Brooke's request for back child support. They also argue that the superior court improperly denied Donna's attempt to intervene. Jason cross-appeals, arguing that the superior court erred by making a child support award without any factual findings documenting Brooke's income.

## III. STANDARD OF REVIEW

■■■ Whether the superior court applied the correct legal standard in a custody dispute presents a question of law that we review *de novo*.[5] A trial court's determination of custody will be set aside only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion.[6] A finding of fact is clearly erroneous when a review of the record leaves us with the definite impression that a mistake has been made.[7] "An abuse of discretion is established where the superior court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[8] Child support awards are reviewed for abuse of discretion and "will not be set aside unless a review of the record as a whole leaves us with a definite and firm conviction that a mistake has been made."[9]

"parent's duty of support encompasses a duty to reimburse other persons who provide the support the parent owes"), *superceded in part by statute*, Alaska Civil Rule 90.3, *as recognized in Vachon v. Pugliese*, 931 P.2d 371, 381 (Alaska 1996).

3. By this time Brooke was represented by counsel.

4. Jason's military service was to entail six months of service in South Korea, followed by one month of leave in which he planned to return to visit his family, and then another five months of service in South Korea. Jason returned from South Korea in July 2007 and Haiden now resides with him.

5. *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

6. *Melendrez v. Melendrez*, 143 P.3d 957, 959 (Alaska 2006) (quoting *Chesser–Witmer v. Chesser*, 117 P.3d 711, 715 (Alaska 2005)).

7. *Elton H. v. Naomi R.*, 119 P.3d 969, 974 (Alaska 2005).

8. *Id.*

9. *Moore v. Moore*, 893 P.2d 1268, 1269 (Alaska 1995) (citation omitted).

In determining whether the superior court's denial of a motion to intervene as a matter of right was in error, we apply our independent judgment "if timeliness is not at issue and if the facts relevant to intervention are not disputed because then only questions of law are posed."[10] Denial of a motion for permissive intervention is reviewed for abuse of discretion.[11]

## IV. DISCUSSION

### A. Brooke and Donna's Argument that the Superior Court Erred in Failing To Apply the Parental Preference Rule Is Moot.

In a custody dispute between two parents, custody is to be awarded according to the best interests of the child.[12] Where, however, a custody dispute is between a parent and a non-parent, a different standard applies. In such situations the parental preference requires that a non-parent seeking custody "show by clear and convincing evidence that the parent is unfit or that the welfare of the child requires the child to be in the custody of the non-parent."[13] The rule gives a parent a custodial preference over non-parents due to the nature of the parent-child relationship[14] and helps avoid "the danger of giving courts the power to award custody ... to [non-parents] solely on the grounds of best interests."[15]

Brooke and Donna suggest that the parental preference rule should have been applied in this case because the custody dispute was effectively between Brooke (a parent) and Jason's wife (a non-parent). They reason that Jason was unable to exercise physical custody over Haiden while stationed overseas and that by awarding him custody the superior court effectively awarded physical custody to Jason's wife. Jason responds that the parental preference rule was inapplicable because he would remain responsible for Haiden during his "temporary physical absence" and was therefore able to exercise physical custody.

On October 29, 2007, we requested supplemental memoranda addressing the status of Jason's deployment and "[i]f the deployment ended, whether the parental preference argument is moot." Both parties responded to the request and agreed that Jason has returned to the United States and Haiden now resides with him. Given the parties' agreement that Jason has returned to the United States and his son is residing with him, the parental preference issue is moot.[16] Because Brooke and Donna failed to provide any alternative argument to challenge the custody determination below, the superior court's custody decision must stand.[17]

### B. The Superior Court Did Not Err in Declining To Allow Donna To Intervene in the Custody Dispute Between Jason and Brooke.

Alaska Civil Rule 24 governs intervention of non-parties in ongoing disputes.[18]

---

10. *Alaskans for a Common Language, Inc. v. Kritz,* 3 P.3d 906, 912 (Alaska 2000).

11. *State v. Weidner,* 684 P.2d 103, 114 (Alaska 1984).

12. *Veazey v. Veazey,* 560 P.2d 382, 386 (Alaska 1977), *superceded by statute on other grounds,* ch. 63, § 30, SLA 1977, *as recognized in Deivert v. Oseira,* 628 P.2d 575, 579 (Alaska 1981).

13. *Evans v. McTaggart,* 88 P.3d 1078, 1085 (Alaska 2004).

14. *Elton H. v. Naomi R.,* 119 P.3d 969, 974 (Alaska 2005).

15. *Turner v. Pannick,* 540 P.2d 1051, 1054 (Alaska 1975).

16. *See Akpik v. State,* 115 P.3d 532, 535 (Alaska 2005) (noting that a claim is moot if it has lost its character as a present, live controversy).

17. In response to our October 29, 2007 request, Brooke now alleges that "there is a significant and material change in circumstances that warrants modification of custody." Our opinion today does not impact Brooke's right to move to modify custody based on the alleged change of circumstances.

18. Civil Rule 24 provides in relevant part:
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene

Under this rule intervention may be as of right or permissive.[19] A movant is entitled to intervene as of right if four conditions are met: "(1) [T]he motion [to intervene] must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) the applicant must show that this interest may be impaired as a consequence of the action; and (4) the applicant must show that the interest is not adequately represented by an existing party."[20] A movant may also seek permissive intervention so long as the "claim or defense and the main action have a question of law or fact in common."[21]

Brooke and Donna argue that Donna was entitled to intervene in the custody proceedings as a matter of right in order to protect her right to seek grandparental visitation. In the alternative, Brooke and Donna suggest that the court's denial of permissive intervention represented an abuse of discretion. We separately address each argument.

### 1. Intervention as of right

■ The superior court concluded that Donna was not entitled to intervene as a matter of right because her interests would not be impaired if she were not permitted to intervene in the custody proceedings and, alternatively, because her attempt to intervene was untimely. Because all four requirements must be met in order for a party to be entitled to intervene as a matter of right, we may affirm the superior court's decision regarding intervention as of right if either ground for denial is supported by the record.[22]

Brooke and Donna assert that this court has previously recognized that a grandparent seeking visitation[23] is entitled to intervene as a matter of right. Contrary to Brooke and Donna's assertion, we have not held that a grandparent seeking visitation is entitled to intervene as of right. The cases which Brooke and Donna cite, *Elton H. v. Naomi R.*[24] and *Todd v. Todd*,[25] did not address this issue. In *Elton H.* we noted that we had "previously allowed psychological parents and grandparents to intervene as parties in custody disputes,"[26] but at no point did we indicate grandparents are entitled to intervene as of right. Likewise, in *Todd* we merely observed in passing that the superior court had allowed the grandparents to intervene in custody proceedings; we did not indicate whether the superior court had allowed the grandparents to intervene as of right or permissively.[27] Brooke and Donna's attempt to extract from these cases a rule holding that grandparents are entitled to intervene as of right in custody proceedings to

in an action when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**19.** Civil Rule 24(a)-(b).

**20.** *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 911 (Alaska 2000) (citing *State v. Weidner*, 684 P.2d 103, 113 (Alaska 1984)).

**21.** Civil Rule 24(b).

**22.** *See Weidner*, 684 P.2d at 113.

**23.** Although Donna mentioned custody in one of her pleadings in the superior court, taken as a

whole her submissions to the superior court make clear that she sought only visitation. Donna referenced visitation in several of her motions and failed to object to Jason's contention that she was seeking visitation, not custody. That Donna was not seeking custody is further evidenced by the fact that she did not assert that she had standing to seek custody of her grandson until the morning of the custody trial. *See Buness v. Gillen*, 781 P.2d 985, 988 (Alaska 1989) (holding that non-parent must have "a significant connection with the child" to have standing to assert claim for custody under AS 25.20.060), *overruled in part on other grounds in Evans v. McTaggart*, 88 P.3d 1078, 1083–84 (Alaska 2004).

**24.** 119 P.3d 969 (Alaska 2005).

**25.** 989 P.2d 141 (Alaska 1999), *overruled in part on other grounds in Evans v. McTaggart*, 88 P.3d 1078, 1083–84 (Alaska 2004).

**26.** 119 P.3d at 979.

**27.** 989 P.2d at 142.

pursue visitation is therefore unavailing. Moreover, both cases are factually distinguishable from the present one. Donna sought to intervene to protect only her visitation rights,[28] whereas the grandparents in *Elton H.* and *Todd* both sought *custody* of the children involved.[29] Thus, neither *Elton H.* nor *Todd* is dispositive of whether Donna was entitled to intervene as a matter of right.

Brooke and Donna also suggest that the superior court erred in concluding that Donna's interests would not be impaired if intervention were denied. Relying in part on the fact that Donna could institute a separate civil action to seek visitation of her grandchild, the superior court concluded that Donna's interests would not be impaired if she were not allowed to intervene. The court observed that Donna was "not without an alternative remedy because, *inter alia,* she is free to commence at any time an independent civil action of her own asserting visitation rights in Haiden." Because we agree that Donna failed to establish that her rights would be impaired as a consequence of the custody action, we conclude that the superior court correctly denied Donna's attempt to intervene as of right.[30]

 A movant seeking to intervene must show that the interest he or she is asserting "may be impaired as a consequence of the action."[31] In determining whether an interest may be impaired courts ask, "[W]ill

the disposition of the action impair as a practical matter the absentee's ability to protect his interest in the ... transaction upon which the suit is based?"[32] This inquiry focuses on the adverse consequences a movant will suffer if not permitted to intervene. Where these consequences are serious, such as where "the decision of a legal question would, as a practical matter, foreclose rights of the proposed intervenor in a subsequent proceeding,"[33] the rationale for allowing intervention is strong. Conversely, where, for example, a movant's non-participation will cause only inconvenience, there is little harm and intervention as a matter of right generally will not be permitted.[34]

In this case Donna sought to intervene in order to protect her right to obtain court-ordered visitation of her grandson. The issue we must therefore resolve is whether Donna's rights or interests were impaired when she was not permitted to intervene in the custody dispute. We conclude that they were not.

Statutes governing grandparental visitation provide two separate means of requesting such visitation. Where a grandparent is permitted to participate as a party in a custody determination, he or she may request that the court "provide for visitation by a grandparent ... if that is in the best interest of the child."[35] Alternatively, under AS 25.20.065,[36] a grandparent may petition for

---

28. *See supra* note 23.

29. *Elton H.,* 119 P.3d at 979; *Todd,* 989 P.2d at 142.

30. Because we affirm the superior court's denial of intervention as of right on this ground, we decline to address Brooke and Donna's argument that the superior court erred in concluding that Donna's request to intervene was untimely. *See State v. Weidner,* 684 P.2d 103, 113 (Alaska 1984).

31. *Weidner,* 684 P.2d at 113.

32. 7C Charles Alan Wright, Arthur R. Miller, & Mary Kaye Kane, Federal Practice and Procedure § 1907, at 250 (2d ed.1986).

33. *Lake Investors Dev. Group, Inc. v. Egidi Dev. Group,* 715 F.2d 1256, 1260 (7th Cir.1983).

34. *See, e.g., Blake v. Pallan,* 554 F.2d 947, 954 (9th Cir.1977) ("Mere inconvenience to the [par-

ty seeking to intervene] caused by requiring him to litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)[ ].").

35. AS 25.20.060(a) provides:

If there is a dispute over child custody, either parent may petition the superior court for resolution of the matter under AS 25.20.060–25.20.130. The court shall award custody on the basis of the best interests of the child. In determining the best interests of the child, the court shall consider all relevant factors, including those factors enumerated in AS 25.24.150(c) and the presumption established in AS 25.24.150(g). In a custody determination under this section, the court shall provide for visitation by a grandparent or other person if that is in the best interests of the child.

36. AS 25.20.065 provides in relevant part:

(a) Except as provided in (b) of this section, a child's grandparent may petition the superior

visitation "[a]fter a decree or final order relating to child custody is entered under AS 25.20.060 or AS 25.24.150"[37] so long as the grandparent did not formally request visitation during the pendency of the custody proceedings.[38]

Donna suggests that she needed to intervene in the custody proceedings in order to protect her ability to seek visitation. We cannot agree. Had Donna been allowed to intervene in the custody proceedings, she could have sought grandparental visitation under AS 25.20.060(a). When intervention was not permitted, however, she was still able to seek visitation under AS 25.20.065 by instituting an independent civil action. In other words, because Donna was able to seek visitation *after* the custody proceedings had been resolved through the procedures established by AS 25.20.065, her right to seek visitation was not impaired. The mere fact that Donna would have been required to seek visitation through different means does not establish that her right to seek visitation was impaired.[39]

Donna argues that she could not have sought visitation under AS 25.20.065 due to her attempted intervention. We disagree. Because Donna was not allowed to intervene, she was never a party to the custody proceedings, meaning that she did not formally "request the court to grant visitation rights during the pendency of [the custody] proceedings."[40] She was therefore eligible to

institute a separate action seeking visitation under AS 25.20.065(b)(1). Although Donna may be correct in arguing that the custody proceedings would have been the most convenient means to determine whether she was entitled to grandparental visitation, this observation neither changes the fact that she was able to institute an independent civil action to secure visitation of her grandson nor proves that her right to seek visitation was impaired by the court's denial of her attempt to intervene.

Because AS 25.20.065 allowed Donna to seek visitation after the custody case was resolved through an independent civil action, the superior court correctly determined that her interests would not have been impaired if intervention were denied. The superior court's denial of Donna's attempt to intervene as of right was therefore not in error.

## 2. Permissive intervention

As noted above, where a movant is not entitled to intervene as of right, he or she may pursue permissive intervention. Permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common."[41] Even where this commonality is established, the superior court may deny a request to intervene where "the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."[42]

court for an order establishing reasonable rights of visitation between the grandparent and child if
(1) the grandparent has established or attempted to establish ongoing personal contact with the child; and
(2) visitation by the grandparent is in the child's best interest.
(b) After a decree or final order relating to child custody is entered under AS 25.20.060 or AS 25.24.150 or relating to an adoption under AS 25.23, a grandparent may petition under this section only if
(1) the grandparent did not request the court to grant visitation rights during the pendency of proceedings under AS 25.20.060, AS 25.23, or AS 25.24; or
(2) there has been a change in circumstances relating to the custodial parent or the minor child that justifies reconsideration of the grandparent's visitation rights.

37. AS 25.20.065(b) (emphasis added).

38. AS 25.20.065(b)(1). Where a grandparent participated in the custody proceedings, he or she may nonetheless institute a separate action seeking visitation under AS 25.20.065 where "there has been a change in circumstances relating to the custodial parent or the minor child that justifies reconsideration of the grandparent's visitation rights." AS 25.20.065(b)(2).

39. We also note that similar standards of proof apply to actions under AS 25.20.060(a) and .065(a), both of which require that the grandparent establish that visitation is in the child's best interest.

40. AS 25.20.065(b)(1).

41. Civil Rule 24(b).

42. *Id.*

The superior court denied Donna's motion to intervene on the ground that it would substantially delay resolution of the custody dispute between Jason and Brooke. Donna moved to intervene on January 23, 2006, roughly three months before the custody trial scheduled to take place in late April 2006. The superior court concluded that allowing Donna to intervene at such a late stage in the proceedings would "muck[ ] up the works of this lawsuit too much at this point in time...." The court noted that it had "a duty to make a prompt permanency decision" and held that it was "not in this child's best interests to hold up the custody trial that's been set here ... for a long time."

We believe the court did not abuse its discretion in denying Donna's attempt to intervene. The record indicates that it was necessary to adjudicate the custody issue at the April trial because of the fact that Jason's presence could not be assured once he was stationed in Korea. We also note that in light of the automatic ninety-day stay that the Servicemembers Civil Relief Act provides for where a servicemember's military obligations substantially impair his or her ability to participate in civil proceedings,[43] even a short delay in resolving the custody issue could have been magnified substantially due to the fact that Jason was scheduled to leave for South Korea shortly after the conclusion of the custody proceedings. In sum, the superior court did not abuse its discretion by denying Donna's motion seeking permissive intervention.

### C. Brooke Waived Her Claims to Past Child Support.

■ Brooke and Donna argue that Brooke is entitled to reimbursement for past support and expenses under *Matthews v. Matthews*[44] and that the superior court erred by failing to address Brooke's *Matthews* claims. Jason responds that Brooke abandoned these claims by failing to pursue them in the superior court. We agree with Jason that Brooke abandoned her claim.

■ Ordinarily, a party seeking to raise an issue on appeal must have raised it and offered evidence on it in the trial court.[45] Therefore, issues not properly raised in the trial court will not ordinarily be considered on appeal.[46] This rule is based on the belief that permitting a party to claim error regarding a claim not raised and litigated below "is both unfair to the trial court and unjust to the opposing litigant."[47]

Brooke listed a cause of action for back child support in a counterclaim against Jason filed in November 2005. She did not, however, pursue the matter any further in the superior court. Brooke did not submit any motions regarding this issue, made no claims to child support in her trial brief, and failed to present evidence or request findings regarding past child support during the custody hearing itself. These failures are especially glaring in light of the fact that Brooke was represented by counsel in the later stages of the proceedings below, most notably during the custody trial.

Brooke and Donna imply that the superior court should have informed Brooke of the need to address this issue before it issued a final judgment. Citing *Lane v. City of Kotzebue*,[48] she argues that a trial court may not issue a final judgment "without addressing all of the issues raised by the parties...." We do not believe that *Lane* goes so far.

---

**43.** *See* 50 U.S.C. Appendix § 521(d)(1).

**44.** 739 P.2d 1298, 1299 (Alaska 1987), *superceded by Civil Rule 90.3, as stated in Vachon v. Pugliese*, 931 P.2d 371, 381 (Alaska 1996).

**45.** *See Forquer v. State, Commercial Fisheries Entry Comm'n*, 677 P.2d 1236, 1238 n. 2 (Alaska 1984) (declining to consider issue on appeal where appellants "failed to adequately develop both their arguments and the record"); *see also* 4 C.J.S. *Appeal and Error* § 306 (2007) (failure to offer evidence on issue in trial court waives issue for purposes of appeal).

**46.** *D.J. v. P.C.*, 36 P.3d 663, 667–68 (Alaska 2001) (holding issues not raised below reviewed only for "plain error"); *see also* 4 C.J.S. *Appeal and Error* § 292 (2007) ("Generally, questions of whatever nature, not raised and properly preserved for review in the trial court, will not be noticed on appeal.").

**47.** *In re Marriage of Walker*, 138 Cal.App.4th 1408, 42 Cal.Rptr.3d 325, 332 (2006).

**48.** 982 P.2d 1270 (Alaska 1999).

In *Lane* a litigant pursued a trespass claim that the superior court held needed to be pled as an inverse condemnation claim.[49] Lane failed to amend his pleadings after being instructed to do so and the superior court granted a final judgment in the case.[50] We reversed, holding that "[t]he court never addressed [the inverse condemnation] claim on its merits, and never dismissed the trespass claim for failing to state a claim on which relief could be granted. Lane had no warning that the court might dismiss this claim before it entered the September 1997 final order."[51] This case is distinguishable from *Lane* because Brooke did not take any steps to adequately raise the claim after initially pleading it. The duty to ensure that each of a party's claims are litigated generally rests with the party advancing the claims.[52] We decline to follow an expansive reading of *Lane* that would require the superior court to ensure that each claim contained in the parties' pleadings has been properly raised before issuing a final decision. This burden properly lies with the litigants, not the courts.

Because Brooke failed to pursue her *Matthews* claim after raising it at the outset of the case, we conclude that she abandoned that claim.

### D. It Was Error To Set Brooke's Support Obligation at Fifty Dollars per Month.

■ In his cross appeal Jason argues that the superior court's support award cannot stand because the court failed to make any factual findings regarding Brooke's income and therefore lacked any evidentiary basis for the fifty dollar per month figure. Jason further argues that the fifty dollar figure was not justified by Civil Rule 90.3(c)(1), which allows for child support awards to be varied for good cause where manifest injustice would otherwise result.

■ Civil Rule 90.3(a)[53] sets out guidelines for calculating child support awards where one parent has been awarded primary physical custody. Where custody involves only one child, the support amount is to be set at twenty percent of the non-custodial parent's adjusted income.[54] Courts may deviate from the percentages established by Civil Rule 90.3(a)(2) in limited circumstances, such as where there is "good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied."[55] As with any other type of decision, a child support award must be supported by findings that are "sufficiently detailed and explicit to give an appellate court a clear understanding of the ground on which the trial court reached its decision."[56]

Here, the only evidence of Brooke's income was testimony from Brooke regarding her earnings from her job as a cocktail waitress. However, the court specifically rejected the income figure that Brooke proposed, stating that Brooke was being "unrealistically optimistic" with her earnings estimate in order to "present herself to the court in a favorable light for custodial purposes." Aside from this discussion, there was no documentation

---

49. *Id.* at 1274.

50. *Id.*

51. *Id.*

52. *See Forquer v. State, Commercial Fisheries Entry Comm'n,* 677 P.2d 1236, 1238 n. 2. (Alaska 1984); *see also* 4 C.J.S. *Appeal and Error* § 306 (2007) ("To be considered on review, a matter must have been timely presented to the trial court in a manner sufficient to obtain a ruling thereon, and thereafter kept alive during the trial.").

53. Civil Rule 90.3(a) provides in relevant part:
A child support award in a case in which one parent is awarded primary physical custody as defined by paragraph (f) will be calculated as an amount equal to the adjusted annual income of the non-custodial parent multiplied by a percentage specified in subparagraph (a)(2).
. . . .
(2) The percentage by which the non-custodial parent's adjusted income must be multiplied in order to calculate the child support award is:
(A) 20% (.20) for one child. . . .

54. *Id.*

55. Civil Rule 90.3(c).

56. *Sloan v. Jefferson,* 758 P.2d 81, 86 (Alaska 1988).

of or findings relating to Brooke's earnings.[57] Specifically, the court did not make any findings as to Brooke's actual income.[58] Because the record falls short of providing findings that give us "a clear understanding of the ground on which the trial court reached its decision" regarding Brooke's child support obligations,[59] we are compelled to reverse the order requiring Brooke to pay the minimum fifty dollars each month in child support. We remand to the superior court for a determination of Brooke's child support obligations in accordance with this opinion.

## V. CONCLUSION

Because Donna did not meet the standard for intervention as a matter of right and the superior court did not abuse its discretion in denying permissive intervention, we AFFIRM the superior court's decision to deny Donna's attempt to intervene. Brooke waived any claim of error relating to her claim for past child support by failing to pursue the claim in the superior court. Because the argument that the superior court failed to apply the parental preference rule is moot, we AFFIRM the court's custody determination. Finally, we REVERSE the child support determination and REMAND for proceedings consistent with this opinion.

BRYNER, Justice, not participating.

---

**57.** Brooke filed a child support affidavit before the custody trial, but did not include any supporting documentation.

**58.** *Cf. Evans v. McTaggart,* 88 P.3d 1078, 1090 (Alaska 2004) (noting that superior court made findings that mother's income "fell below federal income poverty guidelines [before] impos[ing] the fifty dollar minimum sum called for by Civil Rule 90.3(c)(1)(B)").

**59.** *Sloan,* 758 P.2d at 86.