NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| COURTENAY V., | ) | |
| | ) | Supreme Court No. S-15733 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-11-00088 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | No. 1559 – November 18, 2015 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Bethany Harbison, Judge.

Appearances: Robert Noreen, Assistant Public Advocate, Fairbanks, and Richard K. Allen, Public Advocate, Anchorage, for Appellant. Miranda L. Strong, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

---

\*      Entered under Alaska Appellate Rule 214.

## I.  INTRODUCTION

A mother appeals the termination of her parental rights to her eight-year-old daughter, an Indian child under the Indian Child Welfare Act (ICWA).[1] She claims that the trial court erred because it failed to recognize that she had placed her daughter with an Indian custodian.  The record contains little, if any, evidence of this alleged status. The issue of Indian custodianship arose near the close of trial, and even then it came up only in passing.  Though the court appointed counsel for both parents, neither parent introduced the facts necessary to resolve the matter of Indian custodian status, neither requested relief on the issue, and both acted as though the alleged status did not exist. Because no one raised the Indian custodian issue, the trial court made no findings on the matter, and we therefore have no trial record to review.  Accordingly, we find the issue waived.

## II.  FACTS AND PROCEEDINGS

### A.  Family History

Eight-year-old Helena, an Indian child, has lived with her paternal grandmother Jody since October 2011.[2]  Jody has been one of Helena's primary caregivers since birth.  Helena is the daughter of Courtenay and Silas.  Both parents have a history of, and ongoing problems with, drug addiction, mental health issues, and domestic violence.  Many relatives, including Helena's maternal great-aunt Kelly, have cared for Helena intermittently.

The Office of Children's Services (OCS) first became involved with Helena in late 2007 or early 2008 when reports of abuse and neglect prompted OCS to place Helena with Jody, but in 2009 Courtenay and Silas regained custody of Helena after

---

[1]    25 U.S.C. §§ 1901–1963 (2012).

[2]    We use pseudonyms to protect the family's privacy.

OCS failed to file for an extension of custody. From 2009 to 2011, OCS received many reports that Courtenay and Silas continued to struggle with substance abuse, domestic violence, and mental health problems and were not satisfying Helena's basic needs. Many of these reports could not be substantiated because Courtenay and Silas would not cooperate with OCS.

In mid-October 2011, given the ongoing concerns, OCS held a team decision-making meeting to consider Helena's placement. Despite numerous attempts to contact Courtenay and Silas, neither of them attended the meeting. Rather, according to OCS, Courtenay and Silas called an OCS social worker and indicated that they would not attend any meetings, that they were handling Helena's custody the "Native way," and that their family already had "taken [Helena] away" in an attempt to address the problems. OCS further noted that Silas told the social worker that neither he nor Courtenay had set up a legal guardianship or medical consent for Helena. OCS also noted that, during those calls, yelling and cursing in the background made it difficult to have a conversation.

At the time of the meeting, Helena had been living with Jody for about one week, and it appeared that several different family members had been caring for Helena sporadically. Meanwhile Helena's half-brother had been living with Kelly for an unknown period. However, because of an oversight, OCS did not inform Kelly about the meeting until the day it happened, when it unsuccessfully attempted to invite Kelly to participate via telephone. As a result, Jody attended the meeting, but Kelly did not. At the meeting it was decided that Helena would remain with Jody. A social worker notified Kelly about the decision that day.

## B. Proceedings

In November 2011 OCS filed a child in need of aid (CINA) petition to remove Helena from Courtenay and Silas's home. On December 1 a probable cause hearing was held. At the outset of that hearing, the court discussed the need to appoint counsel for the parents and informed the parents about what to expect from the process. Both parents agreed that Helena should continue living with Jody and indicated that they had placed Helena with her. Though both Kelly and Jody attended the hearing, Kelly did not express any concerns about Helena's placement with Jody. On December 6 the court appointed counsel for each parent and resumed the hearing on December 8. After the December 8 hearing, the court provisionally found Helena to be a child in need of aid and ordered that she be removed from her parents' care. Neither party challenges the trial court's finding that December 8, 2011, is the date of removal.

In January 2012, after a contested temporary custody hearing, the court granted OCS an extension of temporary custody. At the hearing, both Jody and Kelly testified that Courtenay had given them consent to seek medical treatment for Helena.[3] Kelly testified that she had "picked up" the form "for [Courtenay] to fill out." The form apparently had an "originat[ion]" date of October 3, 2011. Before Kelly's testimony OCS was not aware that Courtenay and Silas may have granted such permission to Kelly. During the CINA proceedings, no one argued that Kelly should have custody of Helena or that Helena should be placed with Kelly. Kelly's medical consent form was not mentioned again until closing arguments when Silas's attorney cited it as evidence that

---

[3] The medical consent given to Kelly was introduced as an exhibit at the temporary custody hearing. Its exact contents are unknown, however, because it was not admitted into evidence at the termination trial.

Courtenay and Silas had acted responsibly. The issue of Indian custodianship never arose.[4]

During the next several months, despite reunification efforts, Courtenay and Silas did not make significant progress toward remedying OCS's concerns. Thus, in October 2012, OCS petitioned to terminate Courtenay's and Silas's parental rights to Helena.[5] The trial lasted for twelve days over the nine-month period from November 2013 to July 2014.[6]

In November 2013, anticipating that the proceeding would terminate Courtenay's and Silas's parental rights, Kelly requested an adoption placement review hearing. The court agreed to begin the home study process. At that time, Kelly did not mention that she believed herself to be Helena's Indian custodian. Rather Kelly's alleged Indian custodian status was mentioned for the first time when Kelly testified in July 2014, near the end of the termination trial and nearly three years after OCS became involved with Helena for the second time, in the fall of 2011. During that testimony, Kelly testified that she had cared for Helena sporadically and that both parents had given her written consents for temporary guardianship and medical care. These letters, apparently written by each parent individually, were not introduced into evidence. Kelly further testified that when OCS took custody of Helena she considered herself to be an

---

[4]    At the outset of the temporary custody hearing, Courtenay's attorney noted only that "there's some other statutes at play such as appropriate placement of their children and wanting family to be involved in their recovery versus having the [S]tate take over."

[5]    The Native Village of Fort Yukon intervened in the proceedings but did not participate in the trial.

[6]    Though counsel represented Silas at the earlier proceedings, Silas chose to represent himself at the termination trial.

Indian custodian under ICWA. She stated that, according to her understanding, an Indian custodian included "any individual Native person." But she acknowledged that she never told OCS about her belief.

The day before trial ended, Courtenay's counsel questioned the OCS protective service specialist assigned to Helena's case. Courtenay's counsel asked the case worker about her knowledge of Kelly's alleged Indian custodian status and the associated legal protections. The OCS case worker responded that no one had ever mentioned the issue. When pressed about the purpose of the inquiry, Courtenay's counsel stated that he sought only to demonstrate OCS's "bias" toward Kelly. He did not dispute OCS's objection to relevance that there was no evidence of an Indian custodian, which the court sustained. Neither Courtenay nor Silas attempted to remedy this acknowledged deficiency, and they did not ask the court to recognize Kelly as an Indian custodian. They also did not ask the court to place Helena with Kelly. Instead, in his closing argument, Silas acknowledged that Jody had been taking steps to "keep [Helena]" and that Jody had been "good with [her]." He hardly mentioned Kelly. Courtenay closed by pointing out that she "wanted Helena placed with [Roger]," Courtenay's brother. Like Silas, she did not suggest Kelly as an alternative placement.

After the proceedings, the trial court made all of the predicate findings and terminated both Courtenay's and Silas's parental rights to Helena. The court did not address the Indian custodian issue.

On appeal Courtenay argues that plain error exists because the trial court failed to recognize Kelly as Helena's Indian custodian and that, at minimum, Kelly deserved to be represented by counsel.[7] Accordingly she requests that we remand the issue of Kelly's status to the trial court.

---

[7] Silas is not a party to this appeal.

## III. STANDARD OF REVIEW

We apply the clear error standard when reviewing a trial court's factual findings.[8] We reverse "only where we have a definite and firm conviction that a mistake has been made."[9] When reviewing factual findings, "we ordinarily will not overturn a trial court's finding based on conflicting evidence," and we will not "reweigh evidence when the record provides clear support for the trial court's ruling."[10] It is "the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[11]

The trial court's interpretation of "Indian custodian" under ICWA is a question of law reviewed de novo.[12] We adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[13] And we review issues that were not raised in the trial court for plain error.[14]

---

[8] *Pam R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 185 P.3d 67, 71 (Alaska 2008).

[9] *Id*.

[10] *Id*.

[11] *Id*. (internal quotation marks omitted).

[12] *Id*.

[13] *Ted W. v. State, Dep't of Health & Soc. Servs., Office Of Children's Servs.*, 204 P.3d 333, 336 (Alaska 2009) (quoting *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006) (internal quotation marks omitted)).

[14] *Kyle S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 1262, 1267 (Alaska 2013).

## IV. DISCUSSION

### A. Indian Custodian Status

The Indian Child Welfare Act protects the best interests of Indian children and promotes the stability, security, and integrity of Indian tribes and families.[15] It accomplishes these goals through a number of mechanisms, including its recognition of an Indian custodian: "any Indian person who has legal custody of an Indian child under tribal law or custom, under State law, or to whom temporary physical care, custody, and control has been transferred by the parent of such child."[16] A person who satisfies the statutory definition enjoys a number of rights. These rights include many of those possessed by the Indian child's parent, including the right to challenge the termination of parental rights,[17] to notice of involuntary termination proceedings,[18] and to receive court-appointed counsel in such matters.[19]

A person can become an Indian custodian through one of four pathways: "legal custody" to the child under tribal law, tribal custom, or state law; or parental

---

[15]    *In re Candace A.*, 332 P.3d 578, 583 (Alaska 2014).

[16]    25 U.S.C. § 1903(6); see also § 1903(3) (defining "Indian"); §1903(8) (defining "Indian Tribe").

[17]    25 U.S.C. § 1914.

[18]    25 U.S.C. § 1912(a).

[19]    25 U.S.C. § 1912(b) (right to court-appointed counsel if indigent); *see also id.* § 1921 (instructing courts to protect rights of the parent or Indian custodian under the higher standard of protection in any case where both federal and state law applies); *id.* § 1911(c) (right to intervene); CINA Rule 7(b), 7(f) (right to notice of CINA petition). For an overview of Indian custodian rights, see *Pam R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 185 P.3d 67, 69 n.6 (Alaska 2008).

transfer of the child for "temporary physical care, custody, and control."[20] ICWA does not further elaborate on the meaning of "temporary physical care, custody, and control."[21] We have noted that a parent may designate an Indian custodian on an informal basis; a writing is not necessarily required.[22] However a person is not an Indian custodian merely because she has spent a "great deal of time" with an Indian child.[23] Rather courts consider the interplay of a host of factors, including who makes decisions regarding the child's well-being, the family's lifestyle, where the child has spent most of her time and the consistency of that relationship, the parents' actions with respect to both the child and her caregivers, and when and how OCS became involved in the matter.[24] Once OCS takes custody of a child a person can no longer acquire Indian

---

[20]     25 U.S.C. § 1903(6).

[21]     *Pam R.*, 185 P.3d at 71.

[22]     *See id.* at 71-73 (considering a variety of factors before concluding that a grandmother was not an Indian custodian).

[23]     *See id.* (holding that a grandmother was not an Indian custodian even though she had spent a "great deal of time" with the children given the parents' control over decisionmaking and the grandmother's lack of consistent or exclusive care); *J.W. v. R.W.*, 951 P.2d 1206, 1208, 1214-15 (Alaska 1998) (remanding the Indian custodian issue when the trial court entered no finding on the issue, the purported custodian had raised it, and the child had lived with the purported custodian, her stepfather, since birth), *disapproved of on other grounds in Evans v. McTaggart*, 88 P.3d 1078, 1085 n.34 (Alaska 2004); *see also Ted W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 333, 338-39 (Alaska 2009) ("[B]ecause under ICWA a physical custodian's right to care for a child flows solely from a parent's 'temporary' transfer of child-care responsibility, the custodial relationship logically may end when a parent returns and reassumes responsibility for the child's care, custody, and control." (quoting *Pam R.*, 185 P.3d at 71) (internal quotation marks omitted.)).

[24]     *See Molly O. v. State, Dep't of Health & Soc. Servs., Office of Children's*
(continued...)

custodian status through parental transfer.[25]  Thus determining whether someone is an Indian custodian by way of parental transfer generally requires the trial court to engage in a detailed, fact-based analysis that weighs competing evidence and the credibility of witnesses.[26]

### B.    Waiver

We now turn to whether Kelly's alleged status as an Indian custodian was properly raised in the trial court such that it has been preserved for appeal.  To  preserve an issue for appeal, generally the issue must be raised and litigated in the trial court.[27] In assessing whether a claim is waived, we consider factors such as the evidence presented, the parties' arguments, requests for findings at trial, and whether the appellant disregarded a known issue.[28]

---

(...continued)
*Servs.*, 320 P.3d 303, 308-10 (Alaska 2014) (explaining the effect of revoking Indian custodian status); *Ted W.*, 204 P.3d at 339 (explaining revocation when parents and OCS act jointly); *Pam R.*, 185 P.3d at 71 (deferring to the trial court's fact finding that such factors tipped the scale against finding that a grandmother was an Indian custodian).

[25]     *Pam R.*, 185 P.3d at 72.

[26]     *See id.* at 71-73 ("[I]t is 'the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.' " (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001))).

[27]     *Kyle S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 1262, 1268 (Alaska 2013).

[28]     *See id.* at 1267-68 (concluding that an as-applied constitutional challenge was waived in a CINA adjudication given the lack of evidence or argument at trial); *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1118-19 (Alaska 2010) (concluding that the issue of expert qualification in an ICWA termination proceeding was waived given failure to object at trial); *Marcia V. v. State, Office of Children's Servs.*, 201 P.3d 496, 505 (Alaska 2009) (concluding that a parent
(continued...)

Applying this waiver inquiry, we conclude that the issue of Indian custodian status does not survive and thus is waived. First, Courtenay did not adequately raise the Indian custodian issue at trial. Kelly's purported status was raised for the first time days before the three years of proceedings came to a close. And, even then, the issue was raised only in passing; Kelly simply testified that she considered herself to be Helena's Indian custodian. To support this contention the parents offered only the testimony that Kelly may have had a medical consent form around the time OCS removed Helena from their home. But they never produced this form for the trial record. Such evidence, without more, does not support finding Indian custodian status.[29]

Further, at trial Courtenay appeared to acquiesce to OCS's contention that there was no evidence of Indian custodianship. Courtenay did not respond to OCS's objection that none of the parties had produced "any evidence that there [was] an Indian custodian." At no point did the parents ever raise the Indian custodian issue. Instead Courtenay asserted that she wanted Helena to live with her brother, not Kelly, and Silas acknowledged the efforts of his mother, Jody, in helping to raise Helena.

Because Courtenay did not raise and litigate the issue of Indian custodianship at trial, this issue survives only if we find plain error.[30] "[P]lain error

_____

(...continued)
had acquiesced in an ICWA case when the parent's attorney affirmatively indicated that he was not objecting to expert qualifications at trial); *Harvey v. Cook*, 172 P.3d 794, 802-03 (Alaska 2007) (concluding that the issue of past child support was waived given the absence of any argument, requests for findings, or evidence on the matter at trial).

[29]     *See Pam R.*, 185 P.3d at 71-72.

[30]     *Kyle S.*, 309 P.3d at 1267.

exists in a CINA case where 'an obvious mistake has been made which creates a high likelihood that injustice has resulted.' "[31]

Here we find no obvious mistake under plain error review. Nothing in the record or at trial, aside from Kelly's off-hand testimony given at the end of three years of proceedings, flagged Kelly as Helena's Indian custodian. When OCS became involved in the fall of 2011, Courtenay and Silas denied transferring legal authority of Helena to any other family member. The record shows that at the time OCS became involved with Helena in 2011, Kelly, along with other family members, cared for Helena occasionally. Jody appeared to play the primary role as Helena's caregiver: OCS found Helena with Jody when it became involved, and Helena remained with Jody throughout the three years of proceedings. On this record, neither parent ever voiced concerns about the placement with Jody, nor did they ever ask that Helena instead be placed with Kelly. Moreover Kelly's status as an Indian custodian was not closely related to arguments at trial.[32] The parents did not, for example, produce the alleged medical consent letter that they apparently gave to Kelly, even though it might have bolstered their argument that they had acted responsibly and might have helped shed light on Kelly's now-purported status as Helena's Indian custodian. Thus on this record, the trial court did not commit an obvious error when it failed to consider Kelly as a potential Indian custodian.

As explained above, determining whether someone is an Indian custodian requires a specific, fact-based inquiry that often requires weighing competing evidence.

---

[31]    *Lucy J.*, 244 P.3d at 1118 (quoting *Marcia V.,* 201 P.3d at 502).

[32]    *See Kyle S.*, 309 P.3d at 1267-68 (concluding that an as-applied challenge to a statute's constitutionality was waived in a termination of parental rights case given the lack of evidence and argument on the matter at trial); *Harvey*, 172 P.3d at 802 (concluding that the issue of past child support payments was waived given the lack of argument on the matter at trial).

Therefore evidence, including evidence of the parents' intent, must be developed to make this judgment.[33] Generally the parties bear the burden of presenting their case to the trial court.[34] Courtenay did not meet this burden with respect to the issue of Indian custodianship.

Because none of the parties raised the Indian custodian argument at trial, despite the availability of court-appointed counsel, and because there was no obvious mistake by the trial court that might give rise to plain error, we conclude that the Indian custodian issue has been waived.

## V. CONCLUSION

For the reasons set forth above, we AFFIRM the decision of the trial court.

---

[33] *See Kyle S.*, 309 P.3d at 1267-68 (concluding, in an appeal of a CINA adjudication, that the issue of a statute's constitutionality was waived when appellant did not ask trial court to examine facts in light of issue); *Pam R.*, 185 P.3d at 72 (concluding that the trial court had "heard conflicting testimony, made credibility determinations, [and] weighed the evidence" before concluding that a grandmother was not an Indian custodian (footnote omitted)).

[34] *Harvey*, 172 P.3d at 803 (concluding that "[t]he duty to ensure that each of a party's claims are litigated generally rests with the party advancing the claims").